GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. GRACIANO TIRRES.

Decided October 28,' 1903.

**1.—Statute of Limitations—Amendment.**

When the cause of action is an injury resulting from the alleged negligence of the defendant, the time, place and circumstances of which are stated in the original petition, which is filed before limitation has barred the action, limitation can not be pleaded to an amendment which states more fully than the original petition the results of the injury, and which is filed at a time when the statute would bar a recovery on a suit then brought.

**2.—Pleading—Evidence.**

The amended petition alleged "that as a result of his injuries he has lost his mind and reason." Held sufficient to admit proof of the plaintiff's condition of mind, even though it was only temporary derangement.

**3.—Public Crossings—Signals—Charge of Court—Cases Distinguished.**

The trial court charged the jury that "it was the duty of those in charge of the engine pulling said train to blow the whistle of said engine and ring the bell of the same, at least eighty rods from the place where defendant's railroad and said public road cross each other where plaintiff was injured," and in the succeeding paragraph instructed the jury that if they believed there had been a failure to blow the whistle and ring the bell eighty rods from the crossing "as provided by law," and such failure was the proximate cause of the injury, a verdict should be found for plaintiff. Held not obnoxious to the objection that it required the jury to find that the whistle was sounded and the bell rung at a point exactly eighty rods distant from the crossing. Note cases distinguished.

**4.—Negligence—Question for Jury.**

A question of negligence depending on evidence, is one which can not be taken from the jury except in cases where there is no material conflict, and where there is no room for different minds to draw different inferences from it.

Appeal from the District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Baker, Botts, Baker & Lovett* and *Ball & Kemp,* for appellant.

*Patterson & Wallace,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is an action for damages alleged to have resulted to appellee through the negligence of appellant. Appellee recovered a judgment for $4670.

The facts justify the conclusion that appellee was seriously and permanently injured by being negligently struck by a rapidly moving train belonging to appellant at a public crossing. At the same time the wagon and horses of appellees were destroyed. Appellee was not guilty of contributory negligence.

The accident occurred in 1896, and in the original petition, filed on September 9, 1896, the injuries were stated to be to the ribs and ankle of appellee. On April 1, 1902, an amended petition was filed in which, in addition to the former injuries set forth, it was alleged that appellee

was injured on the head. In the original petition $4000 damages were sought; in the amended petition it was alleged that the damages amounted to $25,000. It is the claim of appellant that all damages arising from the injury on the head were barred by limitation. The proposition can not be maintained. The original petition stated the time, place and circumstances attending the injury; the amended petition merely amplified the statement of the injuries received at the same time and under the same circumstances. The plea of limitations was properly overruled. International & G. N. Railway v. Irvine, 64 Texas, 529; Texas & P. Railway Co. v. Davidson, 68 Texas, 370; Tribby v. Wokee, 74 Texas, 142; Elevator Co. v. Mitchell, 78 Texas, 64; Mexican C. Railway v. Mitten, 13 Texas Civ. App., 653.

In the amended petition appellee alleged "that as a result of his injuries he has lost his mind and reason," and the allegation was sufficient to permit proof of the deranged condition of appellee's mind, even though it was only temporary derangement.

The court charged the jury "that it was the duty of those in charge of the engine pulling said train to blow the whistle of said engine and ring the bell of the same, at least eighty rods from the place where defendant's railroad and said public road cross each other where plaintiff was injured," and in the succeeding paragraph instructed the jury that if they believed there had been a failure to blow the whistle of the engine and ring the bell eighty rods from the crossing, "as provided by law," and such failure was the proximate cause of the injury, a verdict should be found for appellee. Appellant contends that the last instruction was erroneous, because it required the jury to find that the whistle was sounded and bell rung exactly at the distance of eighty rods from the crossing. The jury could not have been misled by the charge, because the law had been correctly given in the preceding paragraph and the jury was instructed that the whistling and ringing eighty rods from the crossing must have been "as provided by law." In the Ives case, 71 S. W. Rep., 772, the trial court instructed the jury that the law required the whistle to be blown and bell rung "at eighty rods before crossing a public road," and the appellate court properly held that it was erroneous because the law has no such requirement. In the O'Neal case, 91 Texas, 671, the trial court charged the jury that the law requires the whistle to be blown and bell rung "within eighty rods of a public highway crossing," and the Supreme Court held it erroneous. In the O'Neal case there was evidence that tended to show that the whistle was blown and bell rung before a point "within eighty rods" of the crossing had been reached. No such point was raised in this case, but the jury was compelled to find either that the whistle was not blown or the bell rung at all, or that the statutory signals were properly given. In still another section of the charge the jury were instructed to find for appellant if they believed the signals were given "as required by law, as explained to you above."

As appears from the conclusions of fact, this court is of the opinion

that the jury was justified in finding that appellant was guilty of negligence in not giving the statutory signals before reaching the public crossing, at which appellee was damaged, and that such negligence was the direct and proximate cause of the injury inflicted. The jury was also justified in finding that the injury to appellee's head was received at the same time and place and through the same means that the other injuries were inflicted.

Appellee swore that the whistle was not blown nor the bell sounded by those on the train, and that there were sunflowers and sandhills on the side from which the train approached, and that a "hard" wind was blowing. He testified that before going on the track he turned his head from side to side to see if any train was approaching. He did not see nor hear it until it was almost on him. Pablo Jiminez swore that the whistle was not blown nor the bell rung before appellee was struck. This witness was shown to have sworn differently on another occasion.

Nicolas Madrid, a witness for the appellant, testified that he saw appellee just before and at the time of the accident; he was about 150 yards behind appellee, that he heard the train coming and that he saw it plainly. That appellee seemed to be looking down and whipping the horses; that he thought that appellee could have seen the train; that there were sunflowers and weeds that grew along the edge of the hill, but he did not think they were high enough to cut off the view, and that the track was raised. This witness stated that he did not think the whistle was blown and that he did not hear the whistle or bell.

The rear brakeman on the train said that he could not state positively that he heard the whistle blown or bell rung. The conductor testified to the same effect. The head brakeman was sitting on the tank of the engine, and swore that the whistle was blown, but could not say the bell was rung.

The only two witnesses that swore that the whistle was blown and the bell rung were the engineer and fireman.

The appellant contends that the testimony, a synopsis of which is given, brings the case directly within the purview of Galveston, H. & S. A. Railway Co. v. Kutac, 76 Texas, 473, in which a number of witnesses swore that the signals were given, and the only evidence to the contrary was that of two witnesses who swore that they did not hear the signals, and it was held: "Under this state of the proof, we do not think an instruction recognizing the fact that no signals were made should have been given." Without expressing an opinion as to the soundness of the principle announced in that case, or entering into a discussion of it, it is sufficient to say the facts in this case are much stronger than in the Kutac case. The evidence was sufficient to justify the jury in finding that no signals were given.

The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

NEILL, Associate Justice.—While it is not incumbent upon this court to state either the law or evidence which controlled in its conclusions of fact, yet in deference to appellant's counsel, who so earnestly and sincerely, in this motion, insist that we erred in concluding that appellant was guilty of negligence and appellee free from contributory negligence, we will do so in this case.

It is not the province of the court to weigh the evidence and decide between conflicting statements of witnesses, or decide what inference should be drawn from uncontroverted evidence, if different minds could fairly come to different conclusions from it. A question of negligence, dependent on evidence, should not be taken from the jury except in cases where there is no material conflict, and where there is no room for different minds to draw different inferences from it. The question of negligence is one of law for the court only where the facts are such that *all* reasonable men must draw the same conclusion from them. A case should not be withdrawn from the jury unless the conclusion follows as a matter of law, that no recovery can be had upon any view that can be properly taken of the facts the evidence tends to establish. Texas & P. Railway Co. v. Carlin, 60 Law. Rep. Ann., 463; Choate v. Railway, 90 Texas, 82; Gance v. Railway, 20 Texas Civ. App., 36; Lee v. Railway Co., 89 Texas, 583; Gulf, C. & S. F. Railway Co. v. Gasscamp, 69 Texas, 547; Railway Co. v. Medlenka, 17 Texas Civ. App., 621, 43 S. W. Rep., 1028; Traction Co. v. Bryant, 70 S. W. Rep., 1016; Galveston, H. & S. A. Railway Co. v. Eckles, 25 Texas Civ. App., 179, 60 S. W. Rep., 831; Galveston, H. & S. A. Railway Co. v. Quay, 27 Texas Civ. App., 506, 66 S. W. Rep., 219. In view of these well established principles of law we will examine the evidence on which we based our conclusions on each of the issues.

The negligence charged against appellant, and of which we concluded the evidence was reasonably sufficient to support the verdict, was the failure of employes on the train to give the statutory signals for the crossing upon which appellee was injured.

The appellee testified: "The train did not whistle. I did not hear it. If it did, I did not hear it. If it was whistled I would have heard it. The bell did not ring." Pablo Jiminez testified that he "knew as a fact that the whistle was not blown and the bell was not rung before the engine struck the plaintiff." Nicolas Madrid also testified "that he did not think the whistle was blown at the crossing; that he did not hear it; that if it had been blown, he thought he could have heard it; that he did not hear the bell; that he thought if they had rung the bell, he could have heard it."

These witnesses were all where they could have heard the whistle if it had been sounded eighty rods before reaching the crossing. Opposed to their evidence is the testimony of the engineer, fireman, conductor and two brakemen, of whom the first two testified the whistle was blown, and

the bell rung; the other three that they heard the whistle, but, from their position on the train, could not hear the bell.

Does not this testimony clearly raise an issue of fact that lies beyond the domain of the court to take from the jury, and, when decided by them and their finding approved by the trial court, beyond the province of an appellate court to disturb? That it does is to our minds too plain for argument. Upon the issue of whether a bell was rung at a certain time and place, testimony of those who were where they would have been bound to hear it if it was, that they did not hear it, certainly· can be taken against that of others similarly situated that they did hear or see it rung. Upon such conflicting testimony the law leaves it to the jury to determine the issue. In solving it, they are made the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. As judges of their credibility it is for the jury to say whether witnesses are to be believed or not, and what weight shall be given the testimony of those that are. If this be not so, then the statute which makes them judges is but as a sounding brass and a tinkling cymbal. We can not take from the jury the prerogative of disbelieving a witness, or say what weight can be given the testimony. In this case it is evident that the jury did not believe the testimony of either the engineer or fireman upon the issue under consideration. They believed the testimony of plaintiff and his two witnesses, rather than that of the other three witnesses, as to hearing the whistle of the engine. As to ringing of the bell it is readily seen that the testimony of plaintiff's witnesses should be given more probative force than that of the conductor and two brakemen, for they swore that from their position on the train they could not have heard the bell had it been rung.

The writer has never been able to appreciate the force of the old saw that the testimony of one witness that he heard a clock strike is entitled to more weight than any number who swore they did not hear it. As to what weight should be given such testimony depends upon the credibility of the witnesses, the circumstances surrounding them, and the condition of the clock. If twelve men are in the same room intently listening for the strike of the town clock to tell them of the hour, I should not be inclined to take the testimony of one that he heard it strike against that of all his fellows that they did not hear it. But if this one should go to the window and point to the clock and show that its hands had reached on the dial the numbers indicating the hour I would believe that it had struck, not because he said that he heard·it, but from the probability arising from such demonstrative evidence. Even then, I would not believe it, if it were shown the clock was out of order.

Upon this issue as to the sounding the whistle and ringing the bell, it will not do to say that had it been left to us we would have decided it differently. It was not left to us, but to the jury. And they having decided it, to us is left only the duty of determining whether there is evidence in the record reasonably sufficient to sustain the verdict. We believed, and still believe, that the record shows such evidence. It was under

such belief we concluded that the defendant was guilty of the negligence complained of, and being of the same belief we adhere to that conclusion.

Having found that the defendant was guilty of such negligence, the next question is, was the plaintiff guilty of contributory negligence? This, like the other, lay within the province of the jury, and primarily does not fall within ours. Before considering the testimony on this issue, let it be borne in mind that the burden was upon the defendant to prove the affirmative of it.

"It is doubtless a rule of law that a person approaching a railroad crossing is bound, in so doing, to exercise such care, caution and circumspection to foresee danger to avoid injury·as ordinary prudence would require, having in view all the known dangers of the situation; but precisely what such requirements would be must manifestly differ with the ever varying circumstances under which such approach is made.   *   *   * A failure to look and listen for an approaching train, though such failure may contribute to the injury, can not, under all circumstances, be regarded as negligence.   When, therefore, a person about to cross a railroad track under a given state of circumstances, exercises that degree and amount of care which prudent persons exercise under like circumstances, he is without fault.   In other words, when the circumstances are such that prudent persons would not ordinarily look or listen for an approaching train, there is no negligence in omitting to look or listen." Webb's Pollock on Torts, 555, 556.

If, as the jury found, the statutory signals for the crossing were not given, it may be that a person of ordinary prudence could from that fact be lulled into a sense of security and would on that account fail to look and listen for a train before going on a railway crossing.   But, however this may be, the evidence of plaintiff is that he did look and listen, and failed to see or hear the approaching train before driving upon the crossing.   If he did look and listen it is evident that he neither saw nor heard the train, for he would not have placed his life in jeopardy by acting as he did.   But it is argued by appellant that had he looked and listened he would have seen or heard the coming train and that therefore his testimony is false.   His not seeing the train is explained by its running through sand hills about 300 yards from the crossing, and after emerging from the hills, by weeds and corn standing between him and the track, which obscured his view.   And his failure to hear it is explained by the winds blowing from him towards the train.   There is some conflict in the evidence as to the distance of the sand hills from the crossing, and difference of opinion among the witnesses as to whether plaintiff's view was so obscured by the hills, weeds and corn as to prevent him from seeing the approaching train before driving onto the crossing.   We do not regard it as material which theory as to the distance of the hills from the crossing is correct.   For if it be conceded that they were a little beyond the whistling post, as contended by defendant, plaintiff's view of the train was obscured until the train emerged from them.   From that time, ac-

cording to the evidence, his view may have been obscured by the weeds and corn standing along the east side of the track between him and the railroad. That the witness Nicolas Madrid, who was driving along the same road 150 yards behind plaintiff, testified that he saw the train from the time it passed through the said hills until it reached the crossing, does not conclusively show that plaintiff saw it. Madrid's distance from the corn and weeds may have been such as not to obstruct his view, while the proximity of plaintiff to them may have been such as to entirely obscure his.

It was for the jury to say from all the facts and circumstances surrounding the accident whether plaintiff, in approaching the crossing, exercised such care, caution and circumspection to foresee danger and avoid injury as would have been exercised by one of ordinary prudence under the same or like circumstances. And having found that he did, upon evidence reasonably sufficient to support their finding, it became the duty of this court to sustain their verdict by finding, as a conclusion of fact, that the plaintiff was not guilty of contributory negligence.

We do not believe that either the case of International & G. N. Railway v. De Ollos, 76 S. W. Rep., 222, 1 Law Jour., 11, or Lumsden v. Railway, 73 S. W. Rep., 428, cited by counsel for appellant in support of this motion, militate against our holdings in this case.

In the De Ollos case, the undisputed evidence established prima facie, as a matter of law, contributory negligence. And, under such state of the evidence, it was held that, while the deceased may not have been guilty of contributory negligence, the burden was upon plaintiffs to show such facts from which the jury might, upon the whole case, find him free from negligence.

In the Lumsden case the court observed that from the circumstances attending the accident as well as the testimony, "there was nothing to have prevented deceased from discovering the danger if he had exercised even the slightest precaution. On the other hand, if he did look or listen, it can not be doubted but that he saw or heard the approaching cars, and thought to cross before they could be upon him. In either event it was for the jury to find whether or not his conduct amounted to negligence, and in this state of the evidence the trial court could not safely omit certain paragraphs of the charge, submitting the issue of contributory negligence." It is simply a decision upholding the charge presenting the law upon the facts shown by the attending circumstances and testimony of the witness regarding the accident.

We deem it unnecessary to consider the other grounds for rehearing urged in this motion. It is sufficient to say that we see no reason to change our opinion as to the correctness of the court's charge.

The motion is overruled.

*Overruled.*

Writ of error refused.