HINES, Director General of Railroads, v. MESSER. (No. 2198.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 2, 1920. Rehearing Denied Feb. 26, 1920.)

1. RAILROADS &ominus;350(22)—FAILURE TO FIRST LOOK IN DIRECTION OF TRAIN AT CROSSING NOT CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.

In an action for injuries in collision between a motortruck and a train running at an excessive speed without giving the statutory signal, where plaintiff looked first to the right and then to the left as he passed the last obstruction, and the evidence was undisputed that had he looked first to the left he could have avoided the collision, *held*, that he was not guilty of contributory negligence as a matter of law.

2. TRIAL &ominus;29(1)—REMARKS OF COURT NOT REVERSIBLE ERROR AFTER CHARGE TO DISREGARD THEM.

Where plaintiff's attorneys objected that defendant's counsel had violated the order putting witnesses under the rule, and the court stated that, while their action might not be a technical violation of the rule, it appeared to be a violation of its spirit and intent, but later instructed the jury at defendant's instance to disregard such remarks, and the observations of the court thereon, if the court's remarks were improper, they are not ground for reversal in view of charge to disregard them.

3. RAILROADS &ominus;348(6)—FINDING IN FAVOR OF PLAINTIFF ON ISSUE OF CONTRIBUTORY NEGLIGENCE WARRANTED.

Conflicting evidence upon the issue of plaintiff having reduced the speed of his automobile to 6 miles an hour within 30 feet of the track *held* sufficient to sustain the verdict against defendant.

4. DAMAGES &ominus;132(7)—$8,500 NOT EXCESSIVE FOR BROKEN LEG AND OTHER INJURIES.

Where plaintiff was a comparatively young man, one of his legs was broken, and upon healing was a half inch shorter than the other, and he received additional bruises and injuries, a verdict for $8,500 *held* not excessive.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by John H. Messer against Walker D. Hines, Director General of Railroads, for personal injuries resulting from collision between a truck driven by plaintiff and a train of the International & Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

B. C. Johnson and J. A. Bullock, both of Tyler, and N. B. Morris, John M. King, and John B. King, all of Palestine, for appellant. Johnson & Edwards, of Tyler, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for the sum of $8,500 as damages for personal injuries. The evidence shows that the track of the International & Great Northern Railroad runs practically north and south through the city of Tyler, Tex. Valentine street runs east and west and across the track some distance north of the railway depot. In April, 1918, John H. Messer was driving a truck loaded with oil cans, some of them empty and others full. He was accompanied by a boy named Buckingham, and was traveling Valentine street, going in a westerly direction. For reasons that will hereafter appear, Messer failed to observe the approach of a train from the south in time to stop his truck, and a collision occurred in which he received the injuries for which he sues. The negligence charged was the failure of the railway opera-

---

tives to give the statutory signals when approaching the crossing and in running the train at a rate of speed in excess of that prescribed by an ordinance of the city of Tyler. The defendant pleaded, among other defenses, contributory negligence on the part of Messer in failing to use proper care to ascertain whether or not a train was approaching the crossing before attempting to drive over it. The case was submitted to the jury on special issues, and the following are the findings of fact upon the questions presented in this appeal:

(1) That the engineer in charge of the train was running it in excess of 6 miles per hour when approaching the crossing, and that was a proximate cause of the injury.

(2) That the engineer failed to sound the whistle as required by statute, and that this was a proximate cause of the injury.

(3) That he failed to exercise ordinary care to discover and avoid injuring the plaintiff, and that was a proximate cause of the injury.

(4) That the plaintiff was not guilty of contributory negligence.

(5) That the value of his injuries amounted to $8,500.

(6) That the plaintiff reduced the speed of his automobile to at least 6 miles per hour 30 feet before reaching the crossing.

Upon these findings the court entered a judgment in favor of the appellee for his damages. It is here insisted that the evidence conclusively shows that Messer was guilty of contributory negligence, and that the jury should have been so instructed by the court. Charges to that effect were requested and refused. In passing upon that question we must consider the evidence in its most favorable light for the appellee, and assume that the jury accepted as true the testimony offered which tended to exonerate him from the charge of contributory negligence. It will also be assumed that the train operatives failed to give the statutory signals and were running at a rate of speed much in excess of that prescribed by the city ordinance. In the trial below a large plat was used which had been prepared by a surveyor at the instance of the appellant. That plat, which accompanies the record on this appeal, shows that east of the railway crossing Valentine street was 38 feet wide down to the railway right of way; that it then gradually widened to 48 feet on the opposite side of the right of way. The plat also shows that on the south side of Valentine street were located a number of houses with spaces of different widths between them. The house nearest to the railroad right of way on the south side of the street, the direction from which the train came, was within 42 feet of the center of the railway track. It was 27½ feet from the corner of the lot on which that house was located to the east rail, and 12 feet from the house to the corner of the lot. Messer testified, in substance, as follows: He was using a medium-sized Maxwell truck, the speed of which was limited to 17 miles an hour. He was carrying oil in ten-gallon cans which were stacked together in a frame on the car and were fastened with straps. About two blocks east of the crossing where the collision occurred he picked up the Buckingham boy, and then continued west along Valentine street to the crossing.

[1] When he passed a point one block east of the crossing he was running at about 8 miles an hour. While approaching the crossing he could not and did not see a train coming from the south. Houses and trees obstructed his view. When he got within 20 or 30 steps from the crossing he began to slow down and released the gasoline feed for that purpose. He left on a small amount of gasoline at the steering wheel to keep the motor running. In his best judgment he was about 15 or 20 feet from the crossing when he first saw the train. His view of the railroad towards the north was more open and less obstructed than it was towards the south. In approaching the crossing he looked first to his right toward the north for a train, because he had an earlier and plainer view of the track in that direction. He then looked toward the south and saw an engine approaching. He was then, according to his estimate, 15 or 20 feet from the railroad track. The train, he estimated, was about 90 or 100 feet from the crossing, and in his judgment was going about 25 miles an hour. When he saw the engine he tried to stop the truck, but, discovering that he could not do so in time, he steered to the right. He was unable to stop sooner. The pilot of the engine caught the left front wheel of the truck, and he was thrown out and rendered unconscious. The truck was wrecked and he was injured. He says:

"I could not see the train sooner than I did because my view was obstructed by houses on the south side of the street and trees in the yard of the one that was nearest to the railway. I was going at a speed of about 5 miles an hour when I passed the corner of Mrs. Parker's fence (the last lot east of the railway right of way). On the south side of the street about 30 feet east of the crossing at that point there was a slight decline in the street toward the track. The water runs toward the track in Valentine street east of the railway and west of it. No; I did not hear any whistle blow nor any bell ring at all before I got to the crossing. I used as much caution as I possibly could to ascertain if a train was coming. I listened, besides looking in each direction."

Messer was subjected to a rigid cross-examination in which he admitted that he was familiar with the crossing there and knew that a train might be passing at any time. He also appeared to be less positive about

having reduced the speed of his truck to less than 6 miles an hour, as stated by him in his direct examination. He was corroborated by the Buckingham boy in many material respects. That witness testified that the truck on which they were riding was going at about 8 miles an hour until they got within 30 or 40 feet of the track, when Messer "slowed down" to about 4 miles an hour, or something like that. He did not know whether Messer looked for a train or not; he did not see him looking. They were within 20 or 30 feet of the track before the witness looked; he saw the train before he heard it. As soon as he saw it he spoke of it to Messer, and the latter tried to stop and turned down the track towards the north. There was testimony offered by the appellant that after the injury Messer had stated to other parties that he was going at about 10 miles an hour when he approached the crossing. He was also contradicted in some other material respects. But we may take it as undisputed that, had Messer looked to his left as soon as he passed the last obstruction on the south side of Valentine street between him and the approaching train, he could have seen the train in time to have avoided the collision. The question then is: Was his failure to make that use of his opportunity contributory negligence as a matter of law? We are of the opinion that it was not. It seems to be settled in this state that the failure of one to look and listen for a train when attempting to cross a railroad track cannot under all circumstances be considered contributory negligence as a matter of law. G., C. & S. F. Ry. Co. v. Wagley, 15 Tex. Civ. App. 308, 40 S. W. 538; Frugia v. Railway Co., 36 Tex. Civ. App. 648, 82 S. W. 815; G., C. & S. F. Ry. Co. v. Matthews, 99 Tex. 160, 88 S. W. 192; G., H. & S. F. Ry. Co. v. Tirres, 33 Tex. Civ. App. 362, 76 S. W. 806; M., K. & T. Ry. Co. of Tex. v. Owens, 75 S. W. 579. In the Wagley Case Justice Finley discusses the subject of contributory negligence at some length, and his conclusions seem to have been approved by the Supreme Court of this state in refusing a writ of error. In this case Messer, according to his testimony, did look and listen for a train. That, if true, was some care, and we cannot say it was less than an ordinarily prudent person would have exercised under the same circumstances. Complaint is made in the argument of counsel for the appellant that the failure to use greater precautions than are here shown by those attempting to cross railway tracks multiplies accidents, and this works hardships upon the railway companies of this state. The answer to that argument is that a railway company can be relieved of liability for accidents at crossings by obeying the law in using the care that is required of them. We cannot presume that they will be held responsible for the consequences of injuries which they inflict when the proof shows they have performed their duty under the circumstances.

[2] The tenth assignment of error complains of certain remarks of the court made during the progress of the trial. The bill of exceptions shows that when the trial began the rule was demanded, and the witnesses then present in the courtroom were sworn and given the usual instructions. The defendant expected to use some witnesses who were not then present, and so informed the court. On the second day of the trial it was developed on the cross-examination of one of the defendant's witnesses that on the night before the attorneys for the defendant had assembled in a room at the hotel a number of witnesses who had not attended the trial the day before and had not been sworn or put under the rule. The purpose of that meeting was to interrogate the witnesses and ascertain what their testimony would be. There was also in the room one witness who had been sworn and put under the rule the day before. When those facts were disclosed, one of the attorneys for the appellee objected to the testimony of the witness then on the stand, upon the ground that the rule had been violated. He further moved to exclude the testimony of all witnesses who had been present at that meeting and criticized that proceeding as a violation of the rule itself. The objection was overruled, and the testimony admitted, but before ruling on the objection the court made the following observation:

"This may not be a technical violation of the rule, in that the witnesses in the meeting not having been present in court had not been sworn and instructed and placed under the rule, but it appears to me that there has been a violation of the spirit and intent of the rule."

To this language counsel for the appellant excepted. Later in the proceeding the court instructed the jury, at the instance of the appellant, to disregard and not consider the remarks made by the plaintiff's attorney in charging attorneys for the appellant with having violated the rule of the court, and the observations of the court that the rule had been in spirit violated, telling the jury that those remarks and observations should not and could not be taken as a circumstance against the defendant in that case. We are of the opinion that, even if the remarks of the court be considered as improper under the circumstances, after the giving of the charge requested they do not furnish a ground for a reversal of the judgment.

[3] It is also contended that the finding of the jury that the appellee had reduced the speed of his auto to 6 miles an hour when within 30 feet of the railroad was unsupported by the evidence. The evidence was conflicting upon that issue, but is sufficient to sustain the finding of the jury.

[4] It is also insisted that the verdict for $8,500 was excessive. The testimony in this case shows that the appellee was comparatively a young man, and that his injuries were serious. One of his legs was broken, and in healing was half an inch shorter than the other. He received several other bruises and injuries in addition to the broken leg. According to his testimony and that of others, he suffered much, and was still going on crutches at the time of this trial, about a year after the accident. A physician who examined him testified that the appellee's hip was still swollen, and there were various other evidences of continued injury; that while the fracture had healed, the limb would never be as good as it was before; that in his opinion it would be a long time before the appellee got over his injuries, if he ever did.

We do not feel inclined to disturb the verdict on the ground that it is excessive, and the judgment will be affirmed.