## HINES, Director General of Railroads v. RICHARDSON. (No. 2386.)

(Court of Civil Appeals of Texas. Texarkana. May 27, 1921. Rehearing Denied June 9, 1921.)

1. **Railroads** ☞352—**Finding that automobilist could have safely crossed railroad at less rate of speed not irreconcilable with finding acquitting him of contributory negligence.**

A finding that automobilist could have crossed a railroad in safety, if he had reduced the speed of his car to 6 miles per hour, was not irreconcilable with a finding acquitting him of contributory negligence; the crossing not being obscured and Acts 35th Leg. (1917) c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820l), not applying.

2. **Railroads** ☞346(5)—**Automobilist killed at crossing presumed to have taken precautions.**

In an action for death of automobilist at crossing, the presumption is, in the absence of evidence to the contrary, that he took the ordinary precautions.

3. **Railroads** ☞350(16)—**Failure to look and listen not always contributory negligence.**

Failure of an automobilist to look and listen before crossing a railroad track is not, under all circumstances, contributory negligence.

4. **Death** ☞99(3)—**$12,562 held not excessive for death of 17 year old son.**

A verdict for $12,562 *held* not excessive for loss from wrongful death of services of a 17 year old son, who was intelligent and dutiful, and relieved plaintiff of many of her business burdens, and had an estate of his own, from which he might have assisted her beyond what he earned.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by Lelia A. Richardson against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Affirmed.

Richard Mays, of Corsicana, for appellant.
Campbell & Sewell, of Palestine, for appellee.

HODGES, J. In July, 1919, Frank Richardson, the 17 year old son of the appellee, was killed while crossing the track of the Cotton Belt Railroad in the town of Athens. His mother sued, and recovered a judgment for the sum of $13,674. That judgment in-

cluded $12,562 as the value of the pecuniary aid which the plaintiff had a reasonable expectation of receiving from her deceased son after he arrived at the age of 21 years and the net value of the services he would have rendered before arriving at that age, $50 as the value of services rendered by physicians in attending Frank Richardson after his injuries, $462 expended for funeral expenses, and $600 as damages to the automobile in which he was riding. The evidence showed that Frank Richardson was killed under substantially the following circumstances:

A freight train consisting of about 35 cars arrived at the depot in Athens a short time before the accident. The train stopped so that the caboose was left standing partly on the crossing of what is known as Common street, which runs north and south. The train was uncoupled about 7 cars east of the caboose, and during the switching which followed the disconnected cars remained stationary for several minutes. While those cars were standing upon the track, Frank Richardson undertook to cross from the south side of the railroad to the north, going behind the caboose. He was riding in an automobile, and just as his car got on the track the freightcars were shoved back, striking and wrecking his car and inflicting injuries from which he died soon afterwards. The immediate cause of the cars being moved was the impact of the engine in recoupling the train. The depot at which the train had stopped was situated between Prairieville street on the east and Common street on the west; the two streets being about an ordinary city block apart. On this occasion Richardson came from Prairieville street, going west on a street almost parallel with and near to the railroad. He stopped for a few minutes' conversation at a garage about 75 feet south of the depot and 165 feet a little southeast of the crossing where he was killed. This garage was on the south side of the street on which Richardson was traveling. After leaving the garage he went west, turning a little north with the usual route of travel, and approached the crossing at an oblique angle. There were no intervening objects to obstruct his view of the railway track. The rear end of the train was standing still. The front end, which had been detached, was east of the depot building, and evidently was then moving west for the purpose of making the coupling.

The case was submitted to a jury on special issues, and the following is the substance of the findings made: (1) The caboose was standing so as to occupy about 3 feet of the crossing. (2) Sufficient room for free passage of an automobile was left behind the caboose. (3) The employees of the defendant in charge of the train suddenly and negligently moved it back, causing it to strike the automobile and kill the deceased. (4) The train was put in motion without having any

person at or near the crossing for the purpose of keeping a lookout, and notifying those who undertook to cross that the train was about to be moved, and the train was moved without any such notice or warning. (5) In making the coupling more force and speed were used than would have been used by an ordinarily prudent person under the same circumstances. (6) These different acts of negligence were proximate causes of the injuries. (7) Frank Richardson was not guilty of contributory negligence at the time he drove his automobile on the railroad track. (8) Frank Richardson looked and listened for the purpose of discovering the movement of the train before he went on the track. (9) An ordinarily prudent person would not, under those circumstances, have looked and listened for the movement of the train. (10) Frank Richardson did not fail to exercise ordinary care in going upon the crossing. (11) The crossing of the railway track where Frank Richardson was injured was not obscured, either wholly or partially.

The jury also answered in the affirmative the following question:

"Could Frank Richardson, in the exercise of ordinary care, have crossed over said railroad track and crossing where he received his injuries in its then condition, driving his automobile at a rate of speed not to exceed 6 miles per hour when within 30 feet of said crossing?"

Other appropriate findings were made to support the judgment rendered as to the amount of damages sustained.

[1] The principal defense relied on and now urged in this appeal is that of contributory negligence. While the court submitted that issue in two different forms—one being at the instance of the defendant—and the jury in each case found against the appellant, the argument is now made that the deceased was guilty of contributory negligence as a matter of law. There is a provision of the penal statute regulating the speed of automobiles, which requires persons "driving a motor vehicle * * * when approaching the intersection of a public street or highway with the tracks of a steam railroad * * * where such street or highway crosses such track or tracks at grade, and where the view of the said crossing is obscured, either wholly or partially, shall before attempting to make the said crossing, and at some point not nearer than thirty feet of the said track, reduce the speed of his motor vehicle * * * to * * * not to exceed six miles per hour before * * * crossing, unless there are flagmen or gates at such crossing," etc. See Acts 1917, c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, art. 820l). The evidence tended to show that the deceased as he approached the crossing was traveling at 10 or 12 miles per hour. Under the findings of the jury, however, the statute

is not applicable, and we think the evidence abundantly sustains the finding that the crossing was neither wholly nor partially obscured. It is true the jury also found that the deceased, had he reduced the speed of his car to 6 miles per hour, could, in the exercise of ordinary care, have crossed the track. This finding is not irreconcilable with that which acquits him of contributory negligence. It may be true that he could have crossed in safety, had he been traveling at that or even a lower rate of speed, for he might as a result have been delayed so as to prevent a collision. It cannot be said as a matter of law that a person of ordinary prudence would have taken that degree of care under the circumstances. The jury might have concluded that the exercise of that precaution was an extreme degree of care not required of an ordinarily prudent individual undertaking to cross under those particular conditions.

[2, 3] It may also be true that there is no direct evidence that the deceased looked and listened for a movement of the freight train before he undertook to cross. The presumption is, in the absence of evidence to the contrary, that he took the ordinary precautions. The track and near end of the car were in plain view. There was evidence tending to show that cars did not move until he got on the track, and that they were then shoved suddenly and violently backward. The engine was a considerable distance east of the depot. Richardson might have casually looked and listened, as a person of ordinary prudence would have done under the particular circumstances, without discovering anything to indicate that the cars were then about to be moved. But even if the finding that Richardson looked and listened is unsupported, it does not follow that he was guilty of contributory negligence as a matter of law; for it has been repeatedly held in this state that the failure to exercise that precaution is not, under all circumstances, contributory negligence. Hines v. Arrant, 225 S. W. 767; Hines v. Messer, 218 S. W. 613.

The finding that the railway employees were guilty of negligence and that their negligence was the proximate and sole cause of the injuries sustained by Frank Richardson is abundantly supported by the evidence. Counsel for appellant raised these different issues in a variety of forms. To discuss the assignment in detail would extend this opinion beyond reasonable limits.

[4] We think, furthermore, that the evidence justified the findings of the jury regarding the value of the services of Frank Richardson to his mother and the contributions she had a right to expect from him had he lived. According to her testimony he was an intelligent and dutiful son. He was her only child, and frequently relieved her of many business burdens. He had an estate of his own, from which he might have assisted her beyond what he earned by his own personal efforts.

The testimony shows that appellant had either paid or had become personally responsible for the doctors' bills and funeral expenses, and that the loss from the destruction of the automobile amounted to the sum fixed by the jury.

The assignments of error not discussed have been carefully examined and considered. Our conclusion is that none of them presents any reversible error, and the judgment is affirmed.