### BAKER v. PARTNEY. (No. 2468.)

(Court of Civil Appeals of Texas. Texarkana.
Dec. 22, 1921. Rehearing Denied
Jan. 5, 1922.)

**1. Railroads ⬥═350(23) —Automobile driver's
contributory negligence at obstructed crossing
held question for jury.**

In an action for injuries sustained by the
driver of an automobile truck struck by a train
at a badly obstructed crossing at which plain-
tiff testified trains on the main track could not
be seen before reaching such track, evidence
that he looked and listened for trains, but did
not stop the truck and go ahead or have his
companion go ahead and look for trains, *held*
to make a question for the jury whether he
acted as a person of ordinary prudence would
have acted under the circumstances.

**2. Municipal corporations ⬥═20 — Incorpora-
tion held sufficiently proved.**

An order of the county judge, properly re-
corded in the minutes of the commissioners'
court, declaring the result of an election on the
question of incorporating a city and declaring
the city incorporated as a city of more than 1,-
000 population, evidence that the city since 1904
had operated as an incorporated city or town
with appropriate officers, constituted sufficient
proof of the legal incorporation of the city un-
der Rev. St. arts. 774, 1041.

**3. Municipal corporations ⬥═122(4) — Legal
adoption of ordinance held sufficiently proved.**

A certified copy of an ordinance, approved
by the mayor with due proof of publication,
sufficiently proved the legal adoption of the
ordinance.

**4. Appeal and error ⬥═930(2)—Jury, finding
failure to mitigate damages, presumed to
have considered such failure in awarding dam-
ages.**

Where the jury found specially that plain-
tiff failed to use ordinary care to mitigate the in-
jury sued for by proper treatment, and the court
charged that if the jury so found plaintiff would
not be entitled to recover for any injuries at-
tributable alone to such failure on his part,
etc., it will be presumed that the jury duly
considered all the evidence with reference to
the nature and extent of the original injuries,
the treatment given him at a hospital, and the
conduct and steps taken by him for the relief
of his injuries, and that they awarded dam-
ages after making due allowance for any fail-
ure by plaintiff to mitigate his injuries by sub-
mitting to proper treatment.

Error from District Court, Smith County;
J. R. Warren, Judge.

Action by Charles D. Partney against
James A. Baker, receiver. Judgment for
plaintiff, and defendant brings error. Af-
firmed.

The defendant in error, Charles D. Part-
ney, brought the suit for damages for per-
sonal injuries by reason of a collision be-
tween an automobile truck driven by him,
and one of the receiver's passenger trains.
The injury occurred at a public street cross-
ing in the city limits of Troup, Tex. The
negligence alleged is (1) the violation of the
statute by failure to ring the bell and sound
the whistle of the locomotive a distance of
at least 80 rods from the public crossing,
and (2) the violation of the alleged city
ordinance in running the train at a rate of
speed exceeding six miles an hour. The
receiver answered by general denial, and
specially pleaded that the injuries were prox-
imately caused by the defendant in error's
own negligence, and further specially pleaded
that the injury received was aggravated and
increased by the negligent failure of the de-
fendant in error to use proper means or
treatment to heal or effect an improvement
of his injury.

The case was submitted to the jury on
special issues, and they made the following
special findings: (1) That there was a fail-
ure on the part of the employees operating
the locomotive to blow the whistle and ring
the bell as required by law, but (2) that such
failure was not the proximate cause of the
injury, and (3) that the operatives of the
locomotive did run it at a greater rate of
speed than six miles an hour within the cor-
porate limits of the town of Troup, in viola-
tion of the city ordinance, and (4) that run-
ning the locomotive at a speed in excess of
six miles an hour was the proximate cause
of the plaintiff's injury, and (5) that the
plaintiff was not guilty of contributory neg-
ligence on the occasion of his injury. The
jury further made the special findings (1)
that the plaintiff failed to use reasonable
care to mitigate his injuries by submitting
to proper treatment, and (2) of the amount
of damages sustained on account of the in-
juries suffered by him. In accordance with
the findings of the jury the trial court en-
tered a judgment for the plaintiff in the suit.

The evidence shows that Charles D. Part-
ney was working at the oil filling station of
the Texas Company, which was located about
60 yards south of the street in question, and
between 275 and 300 yards west of the place
where such street crosses the railway track,
being the place where the injury occurred.
He was engaged in driving a truck for the
Texas Company, delivering to its customers
lubricating oils and gasoline. Having loaded
the truck with cans of oil, Partney, with a
companion, started from the oil station to
the business part of Troup, going east, and
was in the act of crossing the main line
track of the railroad at a public and much-
traveled street grade crossing within the cor-
porate limits of Troup, when the locomotive
of a passenger train going north struck the
truck and severely injured Partney, who was
driving, and killed his companion. The main
line of the railway runs north and south.
A public street of the town of Troup runs

---

⬥═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

north of and by the oil filling station, extending east across the right of way and railway track, to and beyond the business portion of Troup. There are three tracks at that crossing: The main line, a side track next and between 12 and 15 feet west of it, and another side track next and west of the first side track. The grade of the street as it approaches the crossing is ascending towards the east. The contour of the ground or street, beginning "about 30 steps" from the crossing, is described as being like "going down a hill into a swag as-deep as or a little deeper than a man's head, like a little valley—is steep and pulls a team hard to pull it." South of the crossing and beside the main line track there is located an ice platform about 20 feet high, with dirt piled under it, which, to one traveling east on the street approach to the crossing, obscures the view of a train on the main line. The section of the town of Troup near and surrounding the street and crossing north of the oil station is built up with residences. At and before the time of the injury there had been placed and left on the side track next the main line a string of box cars extending on each side of the crossing, leaving an opening at the crossing of about 25 feet. Partney testified, and his testimony is not contradicted, that as he approached the crossing, driving about 3½ miles an hour, he listened for a train; that he did not see any, and was not aware of any approaching train because of the obstructions of the ice platform and railway embankments and cars, and because warning of its approach by blowing the whistle or ringing the bell was not given. He testified that his car was not making any unusual noise. Further, he says, just as he emerged from between the box cars on the side tracks, and before the truck reached the main line track, he leaned forward and looked in both directions, and then saw, for the first time, the passenger train approaching and within a short distance of him, but too late for him to avoid or escape the collision either by his getting out or in the operation of the truck. According to the evidence the passenger train was approaching the crossing at a speed of about 25 miles an hour. There is evidence, and the jury found, that the whistle was not sounded and the bell was not rung as a warning of the train's approach. The passenger train was going downgrade, and making but little noise in running. The evidence showed that the town of Troup was incorporated under the laws of Texas as a town of 1,000 inhabitants, and after its incorporation had enacted an ordinance providing:

"That every person running any railroad train or locomotive on any railroad within the corporate limits of the city of Troup shall in approaching the limits of the corporation of the city reduce the speed of such train or locomotive to six miles an hour or less, and shall not run such train or locomotive at a speed exceeding six miles an hour within said corporate limits of said city."

The jury found, and there is evidence to support the finding, that there was a violation of the terms of the ordinance on the part of the operatives of the passenger train, proximately causing the injury in suit.

It appears in evidence that Partney had passed over the crossing that morning before the injury, in going from his home to the place of work at the filling station; and he testified that he was aware of the condition of the crossing and the obstructions as they were at the crossing and surrounding it before the time of his injury, and before he proceeded to go over the crossing at the time he was hurt. At the time he passed over the crossing in the morning there was no train there or about there. He testified:

"I did not know that morning whether or not the train had passed, and I did not know at that time about what time the passenger train was due to go north out of Troup. There was nothing that attracted my attention to the approach of the train before it came out from the box cars and structures there. There was nothing that attracted my attention and gave me information so that I knew or understood that the train was coming until it struck us. * * * If I had heard the whistle blow or the bell ring, or had heard or known that the train was coming, or if I had heard it, I would have stopped. I did not hear any noise of the train, and did not know one was around there. The first I saw of the train I just got a glimpse of it, and at that time it looked like it was some 6 or 8 feet away. I had not seen the train at any point before that time. * * * In the operation of the automobile it was neither practicable nor safe to have stopped my automobile on the grade and killed the engine and get out. After I got to the first track if I had stopped the engine after I got to the top of the grade of the street and killed the engine and got out to see or send some one to see, I would have had to stop my engine and killed it inside of the switches there. I did not know whether or not anybody was switching there in the yards at the time. If I had stopped my engine after I got on top of the dump and got to the first side track, anywhere between the side track and the main track, I would have been in danger of being crushed between the cars if there had been switching in the yards. There was not any place after I reached the top of the grade, going up to the crossing, until I got to the main line track where I could have stopped my engine and killed it without being in danger of being crushed by the cars if switching was going on in the yards and knocking cars across the crossing. When I got to the main line track I looked in both directions."

On cross-examination Partney testified:

"I knew the main line was open for service when I went on it, and I knew then, as well as now, and have known for years, that a great many trains passed along the main line of the

railway, and that a person might expect one at any moment. As I drove out on the main line I leaned over my steering wheel to peep toward the Troup depot, and I did peep that way, and the other way as well, to see if a train was coming. I peeped over there because I thought one might be coming. I thought it might come, and that is the reason why I was looking for it, I was expecting it. Yes; I could have stopped there, in 5 or 6 feet of the rails, and sent the boy who was with me. I could have stopped anywhere before I got to the crossing, and I could have got out. Yes; I knew when I drove up there that if a train were coming from either direction that I could not see it. Yes; I knew that the same passenger train went out of Troup every morning."

The jury made the finding of fact that Mr. Partney was not guilty of contributory negligence, and there is evidence to warrant such finding. The evidence also supports the finding of the jury as to amount of damages.

Bulloch, Ramey & Story, of Tyler, and N. B. Morris, L. W. Morris, and Dabney & King, all of Houston, for plaintiff in error.

Johnson, Edwards, and Hughes, of Tyler, for defendant in error.

LEVY, J. (after stating the facts as above). [1.] The first assignment of error is predicated upon the refusal of the trial court to give a requested peremptory instruction to the jury to return a verdict for the defendant. The point made is that under the evidence Mr. Partney drove onto the track in front of the approaching train without exercising reasonable care to discover it, and was guilty of contributory negligence as a matter of law. It is believed that under the evidence it was an issue of fact for decision by the jury of whether or not Mr. Partney, in attempting to cross the track as he did, acted as a person of ordinary prudence would have acted under the same circumstances. Considering the condition and situation of the crossing at the time, and the care the plaintiff did take, the evidence is not, we think, such as to leave no room for ordinary minds to differ as to the conclusion to be drawn from it touching the degree of care under the circumstances used by him. Trochta v. Railway Co. (Com. App.) 218 S. W. 1038; Hines v. Arrant, 225 S. W. 767; Hines v. Messer, 218 S. W. 611. This assignment of error, as well as the seventh assignment, we conclude should be overruled.

[2] The second assignment of error is predicated upon the court's charge as follows:

"Under the ordinance of the city of Troup the operatives of the locomotive in question were forbidden to run the same within the corporate limits of the said city at a greater rate of speed than 6 miles an hour. If the operatives of the locomotive ran the same as it approached the crossing and passed over the same at a rate of speed in excess of 6 miles an hour, then they would be guilty of negligence."

The objection made to the charge is:

"There is no proof in this case that the town of Troup is legally incorporated under the laws of the state of Texas as a municipality, or that there was an ordinance legally adopted and published forbidding the running of trains within its limits in excess of 6 miles an hour."

There was introduced in evidence the order of the county judge of April 2, 1903, properly recorded in the minutes of the commissioners' court, declaring the result of an election held for that purpose, and the incorporation of the city of Troup as a city of more than 1,000 population; and there is evidence that the city of Troup has operated as an incorporated city or town during and since 1904 to the present time under the general laws of the state, having a mayor, aldermen, city attorney, and marshal. There is also in evidence a certified copy of the ordinance of the town of Troup, passed November 9, 1904, approved by the mayor of the city, with due proof made of its publication. There is, we think, sufficient proof of a legal incorporation. Articles 774 and 1041, R. S. And the ordinance was sufficiently proven to have been legally adopted. In view of this proof there can be no further question made in this case as to the legality of the corporate existence. Anderson Co. v. Railway Co., 52 Tex. 288; Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 440. The assignment is overruled.

[3] The sixth assignment of error is directed to the amount of the verdict as being excessive. The jury did answer that the plaintiff failed to use ordinary care to mitigate the injury by proper treatment. But the court instructed the jury, in estimating the damages:

"That if in answering question 8 you find that the plaintiff failed to use such means or to submit to such treatment as a person of ordinary prudence would have used or submitted to under the same circumstances to heal his injury or to effect an improvement in the same or avoid aggravating the same, then the plaintiff cannot recover for any injuries which the evidence may show are attributable alone to such failure on his part, if any; but he would be entitled to recover, if at all, the damages only, if any, which are directly attributable to the original injuries, not including any increase or aggravation of injuries or condition which the evidence may show, if any, is attributable to any such failure or neglect of the plaintiff."

[4] It will be presumed, in view of the charge, that the jury duly considered all the evidence with reference to the nature and extent of the original injuries, the treatment given at the hospital, and the conduct and steps taken by the plaintiff for the relief of his injuries, and that they awarded damages after making due allowance for any failure of the plaintiff to mitigate his injuries by submitting to proper treatment.

There is considerable evidence of injury of a permanent character, disabling the plaintiff from his usual work, and the finding of the jury, as within their province, as to the amount of damages, should not, we think, be disturbed; there being no passion or bias indicated in any way in the record.

The judgment is affirmed.

### On Rehearing.

We grant the request of plaintiff in error for the incorporation in, and we hereby include in, the opinion disposing of this case the following testimony given by Partney:

"Yes; when I drove between the ends of those two big automobile freight cars standing on the side track nearly 2 feet away, and when I drove out from there approaching the main line of the railway, I had to drive to where my engine would be hit by a train before I could see up and down the track, and as I drove out on that main line track I leaned over my steering wheel to peep towards the Troup depot, and I did peep toward the Troup depot and all the other way as well, to see if a train was coming. I looked both ways for that purpose, and it was coming right there at that time; that is right. I peeped over there because I thought one might be coming, sure, I thought it might come, and that is the reason why I was looking for it, I was expecting it. * * * If I did not stop and take any precaution in the world in time to see a train, so as to save myself, I did not see any negligence in it; I didn't have any—no, I did not stop in time for a train passing there to have failed to hit the truck. No; I did not get a view up and down the main line of the railroad in both directions, or in either direction, for an approaching train before my truck got in reach of a passing train. Yes; I knew when I drove up there that if a train were coming from either direction that I could not see it."