GULF, COLORADO AND SANTA FE RAILWAY CO. v. ELIZA B. WAGLEY ET AL.

Delivered January 23, 1897.

**1. Negligence a Question of Fact for Jury.**

The question of what constitutes negligence or contributory negligence is one of fact for the jury, except where a party has admittedly failed in the performance of a duty imposed by law, or where the act was done in pursuance of some requirement of law, and the conceded facts bring the case within the terms of the law.

**2. Same—Contributory Negligence.**

Where there was evidence from which the jury could reasonably have concluded that the train which struck deceased near the depot was moving at an unlawful

rate of speed, and that he, not being able to estimate its speed, reckoned, in attempting to cross the track in front of it, that it was moving at a lawful speed, a verdict against the railway company will not be disturbed.

APPEAL from Johnson.    Tried below before Hon. J. M. HALL.

*J. W. Terry* and *Chas. K. Lee*, for appellant.—The court erred in not granting defendant's motion for a new trial, for that the verdict of the jury is contrary to and unsupported by the evidence, in that the testimony showed, without dispute, that the failure of the defendant, if there was such failure, to light up its depot and approaches thereto did not in any manner whatever contribute to or bring about the accident in question, and could not have prevented same.    Jenkins v. Central Railway, 15 S. E. Rep., 655; Railway v. Moss, 23 S. W. Rep., 475; Helm v. Railway, 33 S. W. Rep., 396; Chaffie v. Railway, 52 Am. & Eng. R. R. Cas., 366.

*J. G. Hazlewood, Poindexter & Paddleford, Geo. H. Plowman* and *D. G. Wooten*, for appellees.—We submit that there are but two issues in the case for this court to determine, viz:    (1) Does the testimony show such a case of contributory negligence on the part of deceased as to preclude a recovery, in spite of the negligence of the company in the matter of the speed of the train and the lights at the depot?    (2) The court having submitted that issue under proper instructions as to the law, both in the general charge and the special charges asked by the defendant, will this court disturb the verdict and judgment upon the facts as proven?    On the question of contributory negligence vel non we cite the following:    Railway v. Elliot, 7 Texas Civ. App., 216; Railway v. Fuller, 36 S. W. Rep., 319; Railway v. Gray, 65 Texas, 35-36; Railway v. Wilson, 60 Texas, 142-145; Railway v. Chapman, 57 Texas, 75-83; Railway v. Graves, 59 Texas, 322; Railway v. Weisen, 65 Texas, 443; Gist v. Railway, 91 Mich., 446; Railway v. Kuehn, 70 Texas, 585; Railway v. Murphy, 46 Texas, 367; Railway v. Carson, 66 Texas, 347; Railway v. Watkins, 29 S. W. Rep., 233; Campbell v. Trimble, 75 Texas, 271; Railway v. Box, 81 Texas, 670-677; Hays v. Railway, 70 Texas, 605; McQuillan v. City of Seattle, 45 Am. St. Rep., 799; Railway v. Brown, 2 Texas Civ. App., 281; 2 Thomp. on Neg., 1472; Travelers Accident Co. v. Wagley, 74 Fed. Rep., 457; Hart v. Devereux, 41 O. St., 565; Schmidt v. Railway, 75 Ia., 610; Winstanley v. Railway, 72 Wis., 381; Bluedorn v. Railway, 24 S. W. Rep., 57; Correll v. Railway, 38 Ia., 120, 18 Am. Rep., 22; Railway v. Rassmussen, 25 Neb., 810, 13 Am. St. Rep., 527; Grant v. Railway, 45 Fed. Rep., 673.

FINLEY, ASSOCIATE JUSTICE.—This was a suit for damages for the alleged negligent killing of the husband of the plaintiff Mrs. Eliza B. Wagley; she sues for herself and the mother of the deceased, Mrs. Mary Wagley.    The negligence alleged consisted in the failure to furnish and keep sufficient lights at the depot and station of defendant company,

the running of the train into the station at an unlawful and dangerous rate of speed at the time of the accident, whereby deceased, who was lawfully there and attempting to cross the track of the railway, was run over and killed, and failure on the part of the persons operating the train to discover the danger of the deceased and to use proper care to prevent the injury after they did see him, if they saw him at all, the accident having occurred in the corporate limits of the town of Cleburne at night.    It was alleged, that at the time deceased attempted to cross the track of the railway, the approaching train was distant from 90 to 100 feet from the point where deceased was standing, and he supposed it was approaching at a legal rate of speed, which was not more than six miles an hour; that he was standing, as was customary at said depot among persons waiting for friends on the trains, at a point on the west side of the platform, about ten or twelve feet distant from the platform, with the track between; that not being able, on account of absence of lights at and around the station, to see the motion of the train, and relying upon the belief that the train was running into the station at a legal rate of speed, he attempted to cross to the platform on the east, so as to be ready to help his sick sister off the train, she being a passenger thereon and coming to him for medical treatment; that knowing he would have ample time to cross if the train was running as required by law, he started to cross the track, and would have succeeded in doing so safely but for the fact the train ran into the station at the rate of more than twenty miles an hour, but just as he reached the platform and stepped on it, he was struck by the train and knocked under the engine and killed; that but for the absence of lights at the depot deceased could have observed the rate of speed of the train, and but for the unlawful and dangerous rate of speed, he would have escaped any injury and there would have been no risk in the attempt to cross the track.    Damages in the sum of $20,000 were asked in behalf of the widow, and $1000 in behalf of the mother of deceased.

The railway company pleaded general denial and general demurrer, contributory negligence, and that deceased voluntarily took the risk of an apparent danger, or one that would have been apparent by the use of ordinary care and prudence.    There was a verdict and judgment for $5000 for the widow, and $200 for the mother of the deceased.    From this judgment the railway company appeals.

There are a number of errors assigned and presented in the brief of appellant; but counsel for appellant has in open court abandoned all the assignments except those which attack the verdict as not being supported by the evidence.

The proposition urged is, that the evidence shows that the death of Dr. Wagley was occasioned by his own negligence, and was not due to negligence of the railway company.

The evidence shows that deceased had gone to the depot, with other members of his family, to meet and receive his sister who was expected upon appellant's train.    It was at night, the lights were not lighted

outside of the depot buildings, and persons in waiting at the station were using their lanterns for lights. Dr. Wagley was killed while attempting to cross the track, by being struck and crushed by the engine pulling the incoming train, upon which his sister was expected.

Appellees' brief gives a condensed statement of the evidence showing the circumstances under which Dr. Wagley came to his death, which we think is substantially correct, and we adopt it. It is as follows: "All of the witnesses examined by the appellees who spoke of the speed of the train—some eighteen in number—swore that the train was running very fast when it came into the station and when it struck deceased; they placed the speed at from 12 to 25 miles an hour. It was shown that the train was from 20 to 30 minutes late; that it was running faster than usual, and the witness Boyd, who was mayor of the town, swore that it had been in the habit of coming in too fast, and that he had called the attention of the police to that fact, and that on that night it came in faster than ever. An ordinance of the city required trains not to run over six miles an hour inside the city limits, and it was a quarter of a mile from the station to the corporate line.

"Several witnesses for the defendant, including the persons who were running the engine and train that night, swore that the train was not running very fast, about six miles an hour they said.

"The track of the road ran north and south and this was a northbound train. The platform was on the east side of the track, but persons and vehicles were also accustomed to stand on the west side while waiting for incoming trains. Dr. Wagley was standing on the west side of the track that night, where he had been talking to several hackmen, to Mr. Boyd and to his son and daughter-in-law, just before the train came in. There were two tracks there—the main track on the east and a side track next to it on the west—with a space of a few feet between the tracks. Wagley was standing between the two tracks at the time he started to cross the main track to the platform, according to some of the witnesses, several feet west of the side track according to others. It was ten or twelve feet from where he was standing, if he was between the tracks, to the platform; if he was west of the side track, it was farther by several feet. The whistle of the engine blew as the train reached the city limits, and the train came in sight about 150 yards south of the depot and of the place where Wagley was. The headlight was burning, but there is a conflict of evidence as to whether the bell was ringing. Just when Wagley first saw the train is not made certain, but there is testimony that he could have seen it when it turned the curve 160 yards away. He was standing by his son's wife, and also talking to Mr. Boyd, and just before he started to cross the track, his daughter-in-law remarked to him he had better get on the other side of the track. When he started to do so, Boyd spoke to him in warning, but he ran or walked across the track to the platform, going in a diagonal direction according to some of the witnesses, and had just reached the edge of the platform and was in the act of

stepping up on it when he was struck by the engine. The platform was about fifteen inches to two feet high. There is a conflict of evidence as to the distance the engine was from Wagley when he reached the track and attempted to cross; some of the witnesses say it was but twelve or fifteen feet away; the majority of them say it was near the water-tank, which was 90 to 100 feet south of the point where he was struck. All of the witnesses who were at the station that night appear to have seen the train from the time it came in sight, and nearly all of them speak of its rapid rate of speed. There was evidence that, from Wagley's position at the point he started to cross the track, he might not have been able to discover the rapid rate of speed or the nearness of the engine, both from the fact that it was coming directly toward him in the darkness, and also from the glare of the headlight. Several of the witnesses declare that they thought that he had time to get across, and that taking into consideration the distance of the train and the distance Wagley had to go and the gait at which he went, there was time to have crossed the track, but for the rapidity with which the engine reached the depot."

The issues to be determined were: (1) Was the defendant guilty of negligence proximately causing the injury? (2) Was the deceased guilty of negligence contributing to his death?

Upon the first issue there can be no question but that the jury were justified in concluding that the defendant was guilty of negligence in running into the station at an unlawful rate of speed. That this negligence was the proximate cause of the injury, there is evidence tending to show, and the jury were warranted in so determining.

The issue of contributory negligence is more difficult of correct solution. We have, however, reached the conclusion that the evidence warranted the jury in finding that the deceased was not guilty of contributory negligence. He may not have been able, by reason of his position in front of the engine, to correctly estimate the speed and distance the engine was from him, and may have reckoned upon the lawful rate of speed that he would have time to cross the track, and the evidence tends to prove that he would have successfully and safely crossed it had the train been running within the lawful rate of speed.

These questions of fact are peculiarly within the province of the jury. Judge Caldwell, in Bronson v. Oakes, 76 Fed. Rep., 737, happily and accurately draws the distinction between the functions of the jury and the court in determining the issue of negligence. He says: "It is well settled that what constitutes negligence is a question of fact for the jury, and it does not cease to be such although the facts are undisputed, for that would be to deprive a suitor of his constitutional right to have the material facts in the case tried by a jury. Whether, upon the conceded facts in this case, the act of the defendant was negligent, is the principal and ultimate fact in the case, and the decision of this fact, like any other disputed fact in a case, rests with the jury, and not with the court. The question of contributory negligence is likewise one of fact for the jury.

There is no statute or law which defines the quality of every human action, and stamps it in advance as either negligent or prudent.   The law cannot anticipate the conduct and actions of men in all the varying and multiplied relations they sustain to each other, and declare in advance what shall be esteemed prudent and what negligent.   The facts and circumstances of this case as they are disclosed by the complaint differ from the facts and circumstances of any case that ever occurred before, or any case that is likely to occur in the future.   It is manifest, therefore, that if the court should decide as a matter of law that these facts and circumstances do or do not constitute negligence in law, it would be a case where the decision made the law, and not the law the decision.   And hence the doctrine is firmly established that these questions of negligence are questions. of fact for the jury to determine, and not questions of law for the court; and this is the rule where the facts are conceded as well as where they are disputed.   The only exception to this rule is found in that class of cases where a party has admittedly failed in the performance of a duty imposed by law, or where the act was done in pursuance of some requirement of the law.   In this class of cases, when the conceded facts bring the case within the terms of the law, the court applies the law and declares the result   * ˙ *   * .

"It does not follow, however, because it is the exclusive province of the jury to determine the question of negligence, that in no state of facts can the court withdraw the case from the consideration of the jury. Although the rule as to when the case is one for the jury and not for the court has been variously stated, the various statements have the same meaning.   The rule is frequently laid down in these terms: That when the evidence in any given case is conflicting, or the facts disputed, or where the facts are of such a character that different minds might draw different conclusions from them, the case must be left to the jury for their determination.   Another statement of the rule is that the case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.   Probably the most satisfactory statement of the rule, and the one easiest to comprehend and apply (Scott v. City of New Orleans, 75 Fed. Rep., 373, 377), is that given by the Supreme Court in Railroad Co. v. Ives, 144 U. S., 417, 12 Sup. Ct. Rep., 683, where it is thus stated: 'When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.   It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered one of law for the courts.'"

See also following authorities: Railway v. Elliott, 7 Texas Civ. App., 216; Railway v. Fuller, 36 S. W. Rep., 319; Railway v. Gray, 65 Texas, 35; Railway v. Wilson, 60 Texas, 142; Railway v. Chapman, 57 Texas, 75; Railway v. Graves, 59 Texas, 332; Railway v. Weisen, 65 Texas, 443; Railway v. Kuehn, 70 Texas, 585; Railway v.

Carson, 66 Texas, 347; Railway v. Watkins, 29 S. W. Rep., 233; Railway v. Box, 81 Texas, 670-77; Hays v. Railway, 70 Texas, 605; Railway v. Brown, 2 Texas Civ. App., 281; Gist v. Railway, 91 Mich., 446; Railway v. Murphy, 46 Texas, 367; Camble v. Trimble, 75 Texas, 271; McQuittan v. City of Seattle, 45 Am. St. Rep., 799; 2 Thomp. on Neg., 1472; Accident Ins. Co. v. Wagley, 74 Fed. Rep., 457; Hart v. Devereux, Receiver, 41 Ohio St., 565; Scmidt v. Railway, 75 Ia., 610; Winstanley v. Railway, 75 Wis., 381; Bluedorn v. Railway, 24 S. W. Rep., 57; Correll v. Railway, 38 Ia., 120 (18 Am. Rep., 22); Railway v. Rassmussen, 25 Neb., 810 (13 Am. St. Rep., 527); Grant v. Railway, 45 Fed. Rep., 673.

The case of Travelers' Accident Ins. Co. v. Wagley, 74 Fed. Rep., above cited, is a case arising out of exactly the same facts involved in this case. It was a suit upon an accident policy, by the terms of which a recovery could not be had if Wagley came to his death through contributory negligence on his part. That was the issue in the case—contributory negligence on the part of the deceased. The jury in that case, as in this, held that the deceased was not guilty of contributory negligence, and the court held that they were justified in reaching that conclusion.

Keeping within the channel indicated by a long line of well considered authorities, above cited, as the proper one for the court, we do not feel that we would be justified in overturning the verdict of the jury in this case upon the evidence before them and contained in the record before us. It may be, that as an original proposition, the members of this court might reach the conclusion that the deceased was guilty of contributory negligence; but this is not the question for decision. Our duty is to determine whether or not there was any evidence upon which the jury could properly base their verdict. This we feel constrained to determine in the affirmative.

There being no other question presented for decision, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.