ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS V.
GEORGE ALLEN AND WIFE.

Decided March 31, 1904.

**Negligence—Failure to Give Signals—Discovered Peril.**

Evidence considered and held sufficient to support a verdict for $1000 damages for the death of plaintiffs' child at a railway crossing caused by failure of defendant to give signals and to use every means in their power to prevent the injury after discovery of the perilous position of deceased.

Appeal from the District Court of Cherokee. Tried below before Hon. Tom C. Davis.

*E. B. Perkins* and *Marsh & McIlwaine,* for appellant.

*W. H. Shook* and *Shook & Bullock,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by George Allen and his wife against the St. Louis Southwestern Railway Company of Texas for the recovery of damages for the death of their minor daughter, Hattie Allen, which was alleged to have been caused by the negligence of the defendant. The grounds of negligence alleged in the petition were that at the place where the child was killed the public was accustomed to use the track, and the defendant ran its train at a reckless rate of speed without warning of its approach, and after having discovered the peril of the deceased it did not use every means in its power to avert the injury or lessen the danger. The defendant pleaded a general denial and contributory negligence. Trial by jury resulted in a judgment in favor of the plaintiffs for the sum of $1000.

The deceased, Hattie Allen, was the daughter of the plaintiffs On the 10th day of May, 1901, she was killed on the track of defendant's railway near Alto, in Cherokee County, by being struck by an engine drawing a passenger train. At the time of her death she was 9 years and 8 months old and of average intelligence for a child of her age. She was almost entirely deaf and dumb and had to be communicated with by signs. There was evidence, however, that she could hear loud noises as a steam whistle or an engine bell. The accident occurred at the south end of a bridge in the railway track which crossed overhead a neighborhood road along a branch. This road was used by the people of the neighborhood generally for vehicles, but people on foot used a path which deflected from the wagon road and went up the dump around the capsill of the bridge onto the bed of the railroad, which it followed a short distance and then crossed the track. This path had been used by the public ever since the railway was built without objection on the part of the defendant. The railway ran north and south through the farm of the plaintiffs, but the track was not fenced at the bridge. Plaintiffs' house is situated near the track on

the west side and a short distance southwest of the place where the accident occurred. On that day the child had left home and gone across the railroad to a duck's nest; and returning she followed the path going up the dump, and just as she stepped upon the ties near the south end of the bridge a passenger train running at the rate of twenty-five or thirty miles an hour ran against her and the pilot beam of the engine struck and killed her. No warning of the approach of the train was given. The whistle of the engine was not sounded and the bell was not rung. The child was seen by three witnesses as she approached and went onto the track. They all testified that she had her back to the train and was looking south. There was nothing in her conduct to indicate that she was conscious of its approach. One of the witnesses, Andrew Harrison, testified that he was going north on the track and had stepped off to let the train pass and was standing by the side of the track; that the child was looking at him as she came up the dump and walked towards the track and stepped on the end of the ties about four or five car lengths distant from him. She was seen also by the fireman on the engine and a passenger on the train. The fireman testified that he saw her as she came up the dump and that she stopped and he thought she was in the clear, but that she started across the track, when he grabbed the bell cord and hallooed to the engineer and he applied the air. She was about 220 feet from the engine when the fireman first saw her. Nothing was done to stop the train or give warning until just as the child was struck. The train was stopped after striking the deceased in about the distance it had run before striking her after she was first discovered.

We are of opinion that the evidence required a submission of the case to the jury upon the acts of negligence alleged in the petition and that it was sufficient to support the verdict. The fireman saw that the deceased had her back to the direction from which the train was coming and was manifestly unconscious of its approach. He saw that she was about to go upon the track. It is true that he stated that she stopped and that he saw that she was in the clear, but he also saw that she was not aware of the presence of the train and made no effort, according to his own statement, to give any warning, and when she started again and stepped on the track it was too late to stop the train or prevent the injury. Thus according to the fireman's own testimony there was sufficient evidence both of negligence in failing to give any warning and of discovered peril to support the verdict. Even if the deceased or the plaintiffs had been guilty of contributory negligence yet the plaintiffs should recover on account of the failure of the fireman to give warning, after he had discovered the perilous situation of the deceased, by one of the means at hand by which the injury might have been averted even if it be conceded that the train could not have been

stopped. But the evidence offered by the plaintiffs was sufficient to sustain a finding that neither the plaintiffs nor the deceased were guilty of negligence. We do not think the charge as to proximate cause and contributory negligence is subject to the criticisms contained in the propositions under the seventh and eighth assignments of error.

The judgment of the court below will be affirmed.

*Affirmed.*