**VERBLE v. SCHAFF.**   (No. 434–3804.)

(Commission of Appeals of Texas, Section A.
May 30, 1923.)

**1. Negligence ☞83—"Discovered peril" rule
stated.**

The doctrine of "discovered peril" takes into account the contributory negligence of plaintiff, and is predicated on the discovery by defendant, or its employees, of plaintiff's danger
in time to avoid injury, and whether defendant or its employees were guilty of want of
ordinary care in not avoiding injury to plaintiff.

[Ed. Note.—For other definitions, see Words
and Phrases, Second Series, Discovered Peril.]

**2. Railroads ☞350(33)—Issue of discovered
peril for jury.**

In an action by the rider of a motorcycle
against a railroad for injuries suffered by plaintiff in a crossing collision, testimony of plaintiff disclosing his negligence, nevertheless; when
considered with testimony of defendant's witnesses, made the issue of discovered peril one
for the jury.

Error to Court of Civil Appeals of Fourth
Supreme Judicial District.

Action by C. A. Verble against C. E. Schaff,
receiver. Judgment for plaintiff was reversed by the Court of Civil Appeals (240 S.
W. 597), and plaintiff brings error. Judgment of the Court of Civil Appeals affirmed.

Ben H. Kelly, of San Antonio, for plaintiff in error.

C. C. Huff, of Dallas, and F. C. Davis and
W. B. Teagarden, both of San Antonio, for
defendant in error.

RANDOLPH, J. The plaintiff in error
brought this suit in the district court against
the defendant as receiver of the Missouri,
Kansas & Texas Railway Company of Texas
for damages for personal injuries. Plaintiff
recovered judgment in the trial court, and
this judgment was by the Court of Civil Appeals reversed and remanded. 240 S. W.
597. Writ of error was granted by the Supreme Court, with the following notation:

"We are not certain that the Court of Civil
Appeals is right in holding that the issue of
discovered peril was not raised by the evidence."

The Court of Civil Appeals did not render
the judgment, only reversed it, but in so doing they sustained the defendant's contention
that the question of discovered peril was not
in the case. In his first proposition under
the assignments of error, the defendant in
error, as plaintiff in error in the Court of
Civil Appeals, presented to that court as
error the trial court's action in refusing to
instruct a verdict for the defendant upon the

following grounds: That the uncontradicted
facts show, as a matter of law, that plaintiff's
injuries resulted directly and entirely from
his own negligence, and that defendant's employees involved in the accident were guilty
of no negligence whatever that caused or
contributed to the accident, and that it was
shown as a matter of law that:

"Neither the fireman nor the engineer ever
discovered plaintiff's danger in time to avoid
the accident or lessen the injury."

The plaintiff in his petition had pleaded
"discovered peril," and the jury, by their answer to a special issue, had found that the
fireman and engineer had discovered the approach of plaintiff to the railway crossing,
and his danger, in time to have avoided the
collision. Preparatory to the discussion of
the evidence, the Court of Civil Appeals in
their opinion say:

"The first, second, and third assignments
complain of the refusal of the court at appellant's request to instruct a verdict for it, and
refusal to set aside the verdict and grant a new
trial. Relegating the discussion of the assignments and propositions in detail, the important
question here is whether the appellee has established a case of liability as a matter of law.
This of course is looking at it from the standpoint of the facts introduced. The only direct
testimony offered to the accident is by the
appellant himself. His statement is supported
by no other witness as to the accident, but,
on the contrary, is contradicted by the overwhelming preponderance of testimony of all
the other witnesses who witnessed the collision."

And after a lengthy discussion of the evidence, the Court of Civil Appeals conclude
their opinion with this disposition of the
case:

"We have carefully read all the propositions
and assignments presented, and do not think
from the view we take of this case it is necessary to discuss them, as they may not again
arise, and confine our opinion to the question
presented, that the court erred in not setting
aside the verdict of the jury and granting a
new trial. This ground is well taken. We are
unwilling to let this judgment stand, and hereby reverse the judgment and remand this case
for another trial."

From this statement and disposition of the
case quoted, it is apparent that the Court
of Civil Appeals held that as a matter of law
the defendant's fireman and engineer did not
discover the peril of plaintiff in time to have
avoided injuring him; hence that discovered
peril was not made an issue in the case by
the evidence. To our minds the uncontradicted evidence of the engineer presented this
issue to the jury.

The plaintiff was riding a motorcycle at a
rate of speed minimized by him in his testi-

---

mony at 15 miles an hour on his approach to the crossing. From his standpoint he was guilty of no negligence. From the standpoint of defendant's evidence he was clearly guilty of negligence. According to the testimony of defendant's witnesses, the plaintiff was rapidly advancing to the crossing at the rate of 30 to 35 miles an hour, nearly running over the watchman, who was holding up and waving his "stop" signal, and who had to run to get out of the plaintiff's way, as plaintiff, having discovered his peril, attempted to circle in a last-minute effort to avoid the collision. The engineer testified that he was backing his engine to the crossing, drawing a caboose after him, at the time that the plaintiff ran into the tender and that his engine was running about 5 miles an hour. Upon the question as to when he discovered the plaintiff and as to whether he had time to stop and to avoid injuring plaintiff the engineer testified:

"When I first saw this party, he certainly was running 30 or 35 miles an hour. It wasn't but a very few minutes before he turned, you might know, but a very few seconds; he was pretty near right on the flagman before the flagman got out of the way; when I first saw him coming, he must have been 30 or 35 feet from the flagman. It is a fact that I saw the flagman a good deal further off than that, and I saw the motorcycle coming, too, before he got within 30 feet of the flagman. I saw him about 40 or 45 feet before he got to the flagman; he was not very far from the track before he began that circling. I couldn't say just how far he was; he wasn't 20 or 30 feet—wasn't that far. I couldn't say just how far I was from Nogalitos street when I first saw him. I wasn't as far off from the Katy crossing as he was; when I first discovered him, I must have been 25 or 30 feet from the crossing. I was 25 or 30 feet from the crossing, before I reached it, and I saw him coming pretty fast, 35 miles an hour. I didn't stop right immediately. I did not reverse my engine then, and I did not blow the whistle then; but because I saw the sign up there, I presumed he was going to stop, because the rules require him to, and give me that open track, and that was why I kept going on, because I knew I had the right to that road. I could have stopped before I ever got to that street; by reversing the engine I could have stopped before I ever got that tender to that street. Had I used the means at my hand, I could have stopped that engine in 12 or 15 feet; I could have stopped it before I got to that street; but I didn't have no time to stop. I had the right of way, and I did not stop, because the flagman was giving me the right of way, and I expected to use that right of way, because I had the right to it. My engine was under good control, it was well equipped with brakes and air, and going at the rate of speed of five miles an hour, not to exceed that; I could have stopped it in 15 or 20 feet. The plaintiff struck the tank, I couldn't tell you what part of the tank he struck. I didn't see him strike the tank at all. As to when I took my eye off of him, after seeing him circle, well, just as he

began to make the circle, why, I had to get around to my brake valve, to put the brakes on, to make a quick stop, which I did. I went 12 or 15 feet before I stopped, we did not get clear across the street. I didn't get down off my engine until after I moved off the crossing, and the plaintiff had gone. I don't know who got him out. The fireman was there besides the flagman and the plaintiff and myself. The fireman did not leave the cab and get down until after we went back off the crossing. When I discovered the plaintiff riding at that rate of speed, I watched him until he got pretty near on the crossing, until he got. right up close to the tank, and the last I saw of him was when he made the turn, and that was the first time that I commenced to take action there to prevent the accident. It wasn't very long that I had been watching him; couldn't say how many seconds or minutes; he had gone 35 or 40 feet, I guess. After the accident, I got down and looked at that motorcycle that was there—after we went back off the crossing. I did. I couldn't say what condition it was in. It seemed to be laid out back on the sidewalk, I didn't see where they got it from the end of the tank. I did not see my engine strike the plaintiff, and I did not see the plaintiff strike my engine. I do not really know which one struck the other, of my own knowledge, and I did not even get down to extricate him, or to see what part of the tank he was under. I did not slow the engine any until I started to this reversal after I saw him right on the engine. I was approaching the crossing right slowly, though, and I certainly was expecting him to stop. I did not expect to stop myself. I didn't make any arrangements to stop until after I saw the accident had practically happened."

This evidence shows that the engineer could have stopped the engine; that he had it going slowly and under full control, and presents to the jury the question: Did the engineer refuse to stop his engine, after he had discovered the near approach and peril of plaintiff, because the rules of traffic gave him the right of way?

[1, 2] It is no answer to this issue that plaintiff was negligent. The doctrine of discovered peril takes into account the contributory negligence of the plaintiff and then says to the defendant: Notwithstanding plaintiff's negligence, did your employee discover plaintiff's danger in time to avoid injuring him? And was your employee guilty of the want of ordinary care in not avoiding injury to the plaintiff? This being true, then the issue is in the case and should be submitted to the jury. Wilson v. Southern Traction Co., 111 Tex. 361, 234 S. W. 663, and cases therein cited.

We have considered defendant in error's assignments of which the Supreme Court has jurisdiction, presented by him in the Court of Civil Appeals as plaintiff in error in that court, and find no reversible error. We therefore recommend to the Supreme Court that the judgment of the Court of Civil Appeals in remanding the case for retrial be af-

firmed, to be governed by this opinion as far as applicable.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.