GALVESTON, H. & S. A. RY. CO. v. WAG-
NER et al. (No. 7698.)

(Court of Civil Appeals of Texas. San An-
tonio. Feb. 9, 1927. Rehearing Denied
March 9, 1927.)

1. Trial ⚫⚫⚫350(7)—Special issue whether de-
ceased's peril in running toward track was
discovered by train operatives in time to have
averted accident held properly submitted un-
der evidence.

Where fireman saw deceased when she was
30 feet from track, running toward it, and ob-
served her enter adjoining track, hesitate, and
resume running in reckless disregard of dan-
ger, special issue whether defendant's servants
discovered peril in time to have averted acci-
dent was properly submitted to jury, and finding
would not be disturbed.

2. Railroads ⚫⚫⚫338—Contributory negligence
of pedestrian held immaterial, where train
fireman discovered peril in time to avoid in-
jury.

Contributory negligence of deceased in try-
ing to cross track in full view of approaching
train, and against warning of bystanders, is
immaterial, where fireman observed danger, and
failed to use every means in his control to
avert accident.

3. Appeal and error ⚫⚫⚫1002—Appellate court
will be governed by jury's finding on conflict-
ing evidence.

Where testimony as to negligent acts is con-
flicting, appellate court will be governed by
jury's finding.

4. Railroads ⚫⚫⚫338—Fireman, discovering dan-
ger to pedestrian, must use every means to
stop train.

Fireman must use every means at hand to
stop train, reduce speed, and give warning when
he sees person running as if to try to cross
track in front of train.

5. Negligence ⚫⚫⚫68—Jury must place itself in
position of injured party, in determining ques-
tion of contributory negligence.

In passing on the question whether an in-
jured party was guilty of contributory negli-
gence, the jury must consider facts as they
were at time, and place itself in his position.

Appeal from District Court, Guadalupe
County; Lester Holt, Judge.

Action by George F. Wagner and another
against the Galveston, Harrisburg & San An-
tonio Railway Company. From a judgment
for plaintiffs, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Hous-
ton, and Dibrell & Mosheim, of Seguin, for
appellant.

R. A. Weinert and A. J. Wirtz, both of Se-
guin, for appellees.

COBBS, J. George F. Wagner and Annie
Wagner, appellees, sued appellant railway
company for damages in the sum of $15,000,
and for the further sum of $285 for medical
and funeral expenses, for the negligent killing
of their daughter, Miss Nora Wagner, on the
3d day of July, 1924, in Guadalupe county.
She was at that time a single woman, 29 years
old, and the postmistress of Kingsbury; capa-
ble of earning from one to $2,000 per annum.
The daughter contributed to the support and
comfort of her parents, who had small means,
and were in needy circumstances, and she
would have continued to contribute towards
their support.

The chief defense made was that Miss Wag-
ner was in the possession of all her faculties,
and by her own negligence and want of care
contributed to the accident which caused her
death.

The cause was submitted by the court to
the jury by special issues, and upon the an-
swer of the jury to such special issues, and
the findings of damages, judgment was ren-
dered against appellant for the sum of $2,485,
being $2,200, damages apportioned between
appellees in equal proportion, and $285 for ex-
penses for medical and burial expenses.

[1] We do not think there was any error in
the court's overruling the exception to the
pleading, since, in our opinion, a good cause
of action was sufficiently pleaded.

Substantially the testimony is that about
the 3d day of July, 1924, appellant's fast pas-
senger train, going east, struck and killed
Miss Wagner, just as she crossed over the
track. When first seen, Miss Wagner was ap-
proaching the train 40 or 50 feet from the
post office. She was not going directly to the
crossing at the depot in the town of Kings-
bury, but southerly from the post office, going
straight to the depot. She had in her hand a
mail bag. She was the postmistress, and in
the habit of receiving the mail from the train
and delivering it to the train. Later the train
was seen coming in; Miss Wagner was struck
just as she had gotten both feet across, or al-
most across, the rails or track, by the cylin-
der of the engine. She never stopped running
after she started from the post office toward
the depot, and continued running across the
track in front of the engine, when the engine
struck her. Some of the witnesses testified
that the trainmen gave no signal from the
whistle, and that they did not hear the bell
ring. Some of the witnesses testified they es-
timated the speed of the train at all of 25
miles an hour at the time it struck Miss Wag-
ner. The cylinder of the engine sticks out a
bit. At the time she was struck, she was
about 50 feet east of the crossing, east of Cen-
ter street. She was struck right about the
platform of the depot.

Deceased was postmistress at Kingsbury,
and, as a part of her duties, was required to
deliver and receive mail from appellant's
trains. The post office was located north of
appellant's track, and deceased was required

to cross the track, and receive and deliver mail on the south side of the track; that being the side on which appellant's passenger depot was located. At the time she was struck by appellant's train, deceased was attempting to cross the track from north to south, in the discharge of her duties, and had a mail sack on her shoulder. She approached the track at a run, and her approach was observed by the fireman on the engine which struck her, and by a number of disinterested spectators.

The case was submitted to the jury on special issues, and the jury found: (a) That at the time of the accident the train was being operated at an excessive rate of speed; (b) that the appellant was guilty of negligence in operating at such rate of speed; (c) that such negligence was the proximate cause of the injury; (d) that appellant failed to keep a lookout in the direction the engine was moving to observe the approach of travelers to said crossing and to the track when deceased was struck, and failed to operate the same with such speed so that with the means at hand said train might be stopped to prevent injury to such persons after their approach had been discovered; (e) that the servants and employees in charge of said train were guilty of negligence in failing to keep a lookout, and operate the same at such rate of speed with the appliances at hand the train could be stopped in time to prevent injury to travelers approaching the crossing or track after discovering their presence; (f) that such negligence was the proximate cause of the injury and death of Miss Nora Wagner; (g) that at the time of the injury the operators of the train failed to blow the whistle and ring the bell attached to the locomotive on said train, within a distance of at least 80 rods from the public crossing near which said collision occurred, and that the bell was not kept ringing until said train passed the crossing; (h) that the failure to blow the whistle and ring the bell on said engine at such time was the proximate cause of the collision and death of deceased; (i) that Miss Wagner was not guilty of contributory negligence as defined in the charge; (j) that, as Miss Nora Wagner approached or went upon appellant's track, her perilous position was discovered by defendant's servants and employees in time to have averted, by the use of all means at their command commensurate with their own safety, the collision and injury to deceased.

The special issues given by the court cover all the material issues in the case. We had occasion to discuss the doctrine of discovered peril in Schaff v. Verble (Tex. Civ. App.) 240 S. W. 597.

[2] It makes no difference here on the facts of this case, whether or not the deceased was guilty of contributory negligence. The Supreme Court granted a writ of error in the cited case, and held, in an opinion by Commission of Appeals (251 S. W. 1023):

"It is no answer to this issue that plaintiff was negligent. The doctrine of discovered peril takes into account the contributory negligence of the plaintiff and then says to the defendant: Notwithstanding plaintiff's negligence, did your employee discover plaintiff's danger in time to avoid injuring him? And was your employee guilty of the want of ordinary care in not avoiding injury to the plaintiff? This being true, then the issue is in the case and should be submitted to the jury. Wilson v. Southern Traction Co., 111 Tex. 361, 234 S. W. 663, and cases therein cited."

This case must be decided and controlled by the doctrine of discovered peril. Many opinions have been written on that subject. See Furst-Edwards & Co. v. St. L. S. W. Ry. Co. (Tex. Civ. App.) 146 S. W. 1020. Dismissing that subject, we arrive at the real and only question in the case, Was the railway company guilty of discovered peril? The jury upon the facts found that it was.

[3] They found that the train at the time it struck deceased failed to blow the whistle and ring the bell, and that it was operated at an excessive rate of speed. The testimony on that point was conflicting, but we must be governed by the jury's finding. There is no evidence that the engineer of the train saw deceased in time to have averted the accident, but the fireman testified, among other things:

"I was on the north side of the engine as the train was going east, and I saw this young lady that was injured, and from which injury she died. When I first saw her she was about 30 feet out in the road, 30 feet from the track. She had nothing that I observed. I saw nothing in her hands. She was running toward the depot. The train was approaching in the direction of the depot. She was running toward the depot up the road; that is, straight across the street there, running across the street there. She got up to the track next to the main line, what they call the storage track. That is on the north side. She ran up there, and stopped and hesitated. She came to a stop a couple of seconds. The train was still running when she stopped. At that time an application of air had been made, two of them had been made, and she stopped and hesitated, and, as the train was slowing down, making the third application, she ran down the track, looked like to me between ten or twelve feet, and darted across. I had no idea that she was going to try to cross the track, not until she ran and jumped. She stopped; I think she was stopped; she started again. When she started running the second time, she grabbed her hat and pulled it down. As to what length of time elapsed before she was struck from the time I saw she was going to do that, it was only just a few seconds, I couldn't say just exactly. I holloed 'stop.' I couldn't say whether the engineer heard me or not."

On cross-examination this witness testified as follows:

"When we were coming into that station that day, when I first saw the young lady, we were about 80 or 90 feet (from the crossing), something like that. I do not know how far she was

from the crossing. She was about 30 feet or a little more. She was not running directly towards the crossing. She was running toward the depot. That was towards the track. She might have been running toward the track. The track was closer to her than the depot. She would have had to cross the track to get to the depot. She had not reached the track. I say she was about 30 feet from the track, this track that I was talking about, and I was about 90 or 80 feet from the crossing, something like that. I wasn't looking back over the country. I would not have been looking over the towns 200 feet. I don't think there was anything to prevent me from seeing the lady when I was about 200 feet from the crossing. I think I was about 80 or 90 feet of the crossing before I saw her.

"She was about 30 feet north of the north rail of the storage track there; something about that distance. She continued in the direction that she was going. She went about 30 feet before she came to that little stop that I say she made. She had just about then reached the north rail of the storage track when I say she stopped. She came to a full stop just a couple of seconds; just made a stop and started again. When she started again, she did not go in the same direction she was doing. She turned straight down the track. I don't know how long she ran down the track, but between 12 and 18 feet, something like that, and she turned straight across. I holloed 'stop' when she made that jump to go across. I received no response from the engineer.

"I say I saw some lady loading mail and receiving mail from the train. I did not say it was this one that was injured. I did not know the one that was there before this person. I did not know who this lady was that was struck until I was told afterwards. I did not know they had a lady postmistress. I saw a lady load and unload mail over at the mail crane. I naturally supposed she was taking care of the mail. That was always unloaded and loaded from the south side of the track. As to what sort of looking lady this lady was I never paid any attention to her before, but that day this accident occurred she seemed like a very small lady."

There were a number of witnesses who testified to seeing deceased from the time she left the post office in the attempt to deliver the mail sack to the trainmen as she crossed over the track in front of the engine and was struck. They saw the movement of the train all the time, as well as they saw the race of the lady intent on the reckless discharge, we may say, of her duty as postmistress. Though warned by bystanders not to attempt it, she ran into the very jaws of death. The engineer did not see her in time, and was in no position to see her, as we understand the evidence, and used no means at hand, until too late, to save her life. But was that so with the fireman, who was in his place of duty, and plainly saw the woman. Should he not timely have called the attention of the engineer to her, and might he not have slowed down his train the least bit which would have saved her life? This case is carrying the doctrine

of discovered peril to the very limit. The writer thought so in the Schaff-Verble Case, supra, but the Commission of Appeals did not, as above shown, and the Supreme Court approved their holding.

Considering the authorities, it seems almost impossible in the light of the last chance or discovered imperil doctrine to escape liability for the consequences of a collision in the race with one attempting a crossing at a reckless rate of speed.

It was held in Houston, E. & W. T. Railway Co. v. Kopinitsch (Tex. Com. App.) 268 S. W. 923:

"At some time while the fireman watched the car approach he may have apprehended that the occupants thereof would be placed in peril. Just at what time it first occurred to the fireman that there was danger to those in the automobile under the facts in evidence, and whether it was when the car was at such distance from the crossing that stopping the train, or diminishing its speed, or blasts from the whistle, in the exercise of ordinary care would have prevented the collision is, we think, an issue of fact."

In further considering the case after the certified questions had been answered by the Supreme Court, the Court of Civil Appeals, in 282 S. W. 887, held:

"But the question of whether the occupants of the automobile actually saw the train is not material on the issue of discovered peril. If, as held by the Supreme Court, the circumstances shown by the evidence justify the conclusion that it appeared to the fireman that the occupants of the automobile did not know the train was approaching, it became the duty of the fireman to act upon this reasonable appearance of danger to the deceased, and his failure to use proper care to prevent the injury could not be excused by showing that the occupants of the car saw the train approaching the crossing. This disposes of appellant's contention that the trial court erred in not submitting to the jury the question of whether the occupants of the automobile saw the train approaching the crossing."

It is held in Higginbotham v. Gulf, C. & S. Ry. Co. (Tex. Civ. App.) 155 S. W. 1025:

"If the doctrine of discovered peril only applied when the operatives of a train were certain that the person injured was in peril of life and took no steps to save him when his injury could have been prevented, the necessary proof in every case in which discovered peril is the ground of recovery would show a case of murder or criminal negligence. Such proof is not necessary."

In Southern Traction Co. v. Rogan (Tex. Civ. App.) 199 S. W. 1135, it is held:

"To constitute discovered peril it is not always necessary that the injured party should be in a place of actual danger. It is sufficient if it is apparent that he is about to enter a perilous situation. H. & T. C. Ry. Co. v. Finn

(291 S.W.)

[Tex. Civ. App.] 107 S. W. 94; Id., 101 Tex. 511, 109 S. W. 918."

[4] All the witnesses who observed the lady thought she would fail in her attempt to safely cross the track ahead of the engine. This must have likewise been obvious to the fireman who was watching her. Any ordinarily prudent person in the position of the fireman should have foreseen that it was the purpose of the deceased to attempt the crossing, and any ordinarily prudent person would have used all the means at hand to stop the train, reduce its speed, or give warning to the deceased of her danger. Trochta v. Missouri, K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; Schaff v. Young (Tex. Civ. App.) 264 S. W. 582; St. Louis & Southwestern R. R. Co. v. Allen, 35 Tex. Civ. App. 355, 80 S. W. 240.

In Lancaster v. Browder (Tex. Civ. App.) 243 S. W. 625, affirmed by the Commission of Appeals in 256 S. W. 905, the Commission of Appeals stated the question as follows:

"So we have here the bare question of whether or not seeing the approaching train she was negligent as a matter of law in attempting to cross at the time, place, and in the manner she did."

The court then quotes with approval from the opinion in the case of Gulf, C. & S. F. R. Co. v. Wagley, 15 Tex. Civ. App. 308, 40 S. W. 538.

[5] In passing on the question of whether an injured party was guilty of contributory negligence, the jury must consider the facts as they existed at the time, and, in fact, the jury must place itself in the position of the injured party. Texas & N. O. Ry. Co. v. Diaz (Tex. Civ. App.) 234 S. W. 919; Gulf, C. & S. F. R. Co. v. Wagley, 15 Tex. Civ. App. 308, 40 S. W. 538; Texas & N. O. R. R. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Emberlin v. Wichita Falls R. R. & Ft. W. R. R. Co. (Tex. Com. App.) 267 S. W. 463.

We have considered the objections to the charge and the refusal of the court to give the special charges, and do not regard the action of the court as erroneous. The issues were well given and expressed, and the jury could not be confused thereby. They found every fact in favor of appellees, and we will not disturb their finding. Because the deceased saw and knew of the approaching train, and in the discharge of her duty attempted to cross over, presented the question of contributory negligence for the jury. The evidence, in view of the cited authorities, raised the question of discovered peril, and, being apparent to the fireman, one of the operatives of the train, that she was about to enter into a perilous situation at the time her approach to the train was discovered, and, as held in Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905; Id. (Tex. Civ. App.) 243 S. W. 625, the judgment might be sustained

on the ground of reckless speed through a town of the size of Kingsbury.

We find no error of law assigned committed by the trial court, and the judgment will be affirmed.