[6] We recommend that both questions Nos. 1 and 2, as certified, be answered, "Yes."

CURETON, C. J. Opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

═══

## GALVESTON, H. & S. A. RY. CO. v. WAGNER et al. (No. 990–4852.)*

Commission of Appeals of Texas, Section A. Oct. 19, 1927.

**1. Negligence ☞83—One has "knowledge of another's peril" when it reasonably appears that latter is pursuing course which will probably cause serious injury.**

One has "knowledge of peril of another," within doctrine of discovered peril, whenever it reasonably appears from the known facts and circumstances that the latter is pursuing a course which will probably terminate in serious bodily injury to him, and that he probably will pursue it to the end.

**2. Railroads ☞350(33)—Discovered peril of deceased, running to railroad track, held for jury.**

In action for death of postmistress when attempting to cross tracks in front of approaching train in order to deliver a mail bag, wherein it appeared that fireman saw deceased before train struck her, evidence *held* to warrant submission to jury of issue of discovered peril.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by George F. Wagner and another against the Galveston, Harrisburg & San Antonio Railway Company. A judgment in favor of plaintiffs was affirmed by the Court of Civil Appeals (291 S. W. 664), and defendant brings error. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Dibrell & Mosheim, of Seguin, for plaintiff in error.

A. J. Wirtz and R. A. Weinert, both of Seguin, for defendants in error.

HARVEY, P. J. The defendants in error recovered judgment in the district court against the plaintiff in error for the sum of $2,485 damages resulting from the death of Miss Nora Wagner, alleged to have been caused by the negligence of the plaintiff in error. The trial was before a jury; and among the issues of fact which the jury resolved against the railway company, and upon which the judgment was rendered, was that of discovered peril. The plaintiff in error contends that there is no evidence raising this issue.

*Although the evidence is sharply conflicting in important respects, there is evidence supporting the following facts, to wit:*

---

The railway track of the plaintiff in error runs east and west through the small town of Kingsbury, in Guadalupe county. The deceased, Miss Nora Wagner, was struck and killed in said town, in the daytime, by one of the passenger trains of the plaintiff in error, which was scheduled to stop a very short time at the depot in Kingsbury for the purpose of taking on and discharging passengers and mail. The depot stood on the south side of the main track upon which the train in question was running; and a side track ran parallel with the main track, on the north side thereof and about 20 feet therefrom. The post office at Kingsbury is situated at a point about 150 feet northwest of the depot, across an open plaza and intervening street. There was a public crossing over the railway tracks at a point about 35 feet west of the depot. The deceased was postmistress at Kingsbury, and it was part of her duties, as such, to deliver and receive mail to and from the passenger trains of the railway company, on the south side of the main track, at the depot, and she had been regularly performing this duty for some months.

On the occasion in question, the passenger train was approaching the depot from the west, and at about the time the train whistled for the station the deceased left the post office and went running, as fast as she could run, towards the depot. She carried in her hands a sack of mail for the purpose of delivering it to the mail clerk on the incoming train, on the south side of the main track, at the depot, which was the regular place for mail from that post office to be delivered. The mail sack was such as is ordinarily used in the United States mail service, being about 2½ or 3 feet long, and about 18 inches in diameter. When the deceased left the post office she ran directly toward the depot, without stopping, hesitating, slackening her speed, or swerving from a direct line to the depot, until she was struck by the train. At the time she was struck and killed, she had cleared both rails of the main track, and was struck by the cylinder of the engine which protruded from its south side. The point at which she was struck was immediately south of the south rail of the main track, and about opposite the west end of the depot. While the train was approaching the station, the fireman was sitting on the fireman's seat in the north side of the cab of the engine, and the engineer was sitting in his seat on the other side. The fireman was looking from the window of the cab, and first saw the deceased running towards the depot when she had reached a point about 30 feet north of the side track, which point is about 50 feet north of the main track upon which the train was running. At the time the fireman first saw the deceased running towards the depot, the engine drawing the train was about 140 feet west of the point where deceased was struck, and was running at a speed of about 20 or 25 miles an hour. From the time the fireman first saw the deceased running towards the depot, he continued to watch her until she ran in front of the engine.

At no time, from the time the fireman first saw deceased, was any effort made to avert the collision by stopping the train or diminishing its speed, except that the fireman shouted "Stop!" to the engineer just as the deceased was in the act of stepping upon the track immediately in front of the engine. The train was well equipped with air brakes and other stopping appliances, which were in good working order. By the application of these stopping appliances, which were operated by the engineer, the speed of the train could have been materially diminished within a distance of a few feet, with safety to those on the train. Had the train been delayed as much as a single second in arriving at the point of collision, Miss Wagner would not have been injured. The fireman knew that the regular place of delivery of mail to the trains at Kingsbury was on the south side of the main track, at the depot. He also knew that the deceased usually delivered mail to trains at that place, as he had seen her do so on previous occasions. He was not personally acquainted with the deceased, however, and denied that he recognized her, while she was running towards the depot, as being the same woman that he had seen delivering and receiving mail to and from trains at the depot on previous occasions. He further denied that he saw the mail sack in her hands. However, according to the testimony, including his admissions, his view of her was open and unobstructed; and he admits having looked at her all the time while she was running toward the track after she had reached a point some 50 feet north of the main track; and testimony from other sources show the mail sack to have been plainly within his view. After the train whistled for the station, as has been stated, the whistle was not sounded or the bell rung at any time before the deceased was struck.

Pretermitting consideration of matters of evidence bearing on the issue of contributory negligence, which issue was resolved by the jury against the plaintiff in error, we shall assume for the purposes of the case that Miss Wagner was guilty of contributory negligence, as a matter of law, and shall direct our attention exclusively to the issue of discovered peril.

[1] In order for a person to be in peril, it is not necessary that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, then, in such event, the second person is held to have knowledge of the peril.

of the other. This doctrine, we think, is clearly deducible from the many decisions on the subject of discovered peril, among which are the following: Houston E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 367, 268 S. W. 923; Texas & P. R. Co. v. Breadow, 90 Tex. 31, 36 S. W. 410; Houston & T. C. R. Co. v. Finn, 101 Tex. 511, 109 S. W. 918; Verble v. Schaff (Tex. Com. App.) 251 S. W. 1023; Gulf, C. & S. F. R. Co. v. Lankford, 88 Tex. 499, 31 S. W. 355; Higginbotham v. Railway (Tex. Civ. App.) 155 S. W. 1025.

[2] It is believed that, under the facts and circumstances in evidence, it was the province of the jury to determine that the fireman, while he was looking at the deceased running at her utmost speed towards the depot, saw the mail bag in her hands; and knew that it was her duty to deliver the mail bag to the mail clerk on the train, on the south side of the track; and knew that, in an effort to perform that duty, she probably would go upon the track, as she did, and be struck by the train. The evidence, we think, is such as to justify the jury in finding that the fireman, notwithstanding his denial of such knowledge, knew all these things in time to avoid, by the exercise of ordinary care, injury to Miss Wagner. The issue of discovered peril is raised by the evidence.

We recommend that the judgment of the Court of Civil Appeals (291 S. W. 664), affirming the judgment of the trial court, be affirmed.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.