### SHORT et al. v. NEHI BOTTLING CO. et al.

### No. 12927.

Court of Civil Appeals of Texas. Dallas.

Nov. 16, 1940.

Rehearing Denied Dec. 14, 1940.

Truett & Truett, of McKinney, and Haskell H. Cooper, of Dallas, for appellants.

Lucian Touchstone and Strasburger, Price, Holland, Kelton & Miller, all of Dallas, and W. P. Abernathy, of McKinney, for appellees.

LOONEY, Justice.

Frank A. and Lizzie E. Short, parents of Bobbie Jack Short, a boy six years of age at the time of his death, brought suit against appellees to recover damages for the death of their son, alleged to have resulted from the negligent operation of a truck by Vester Justice, one of the appellees.

The jury exonerated defendants of negligence in the respects as submitted, found that, in running across the street, at the time and place in question, the little boy was negligent, and that such negligence was a proximate cause; also found that his death was the result of an unavoidable accident. Based upon these findings, the court rendered judgment in favor of appellees, that appellants take nothing, from which they appealed.

Appellants requested the submission of the issue of discovered peril, contending that same was clearly raised by both pleading and proof. The action of the court in refusing to submit the issue is assigned as error and ground for reversal.

The accident, resulting in the death of Bobbie, occurred in front of the Church of Christ building on South Wilcox Street in the City of McKinney. At the time, the truck was traveling about twelve miles per hour, north, on the right side of the street, four or five feet from the east curb. When first seen by the driver, the child was standing on the west side of the street, fifty to seventy-five feet north of where the truck was at the time, one foot on the curb and the other out in the street, back turned to the south, seemingly oblivious of the approaching truck. Evidently intending to join some children at play on the sidewalk in front of the church building, the little boy, running northeasterly across the street, ran into the pathway of the truck, was knocked down, and the right front and rear dual wheels of the truck passed over his body, inflicting injuries resulting in his death.

The material facts were furnished by the testimony of three witnesses, Vester Justice, appellee, driver of the truck, and two eyewitnesses, Cecil Funderburg and Jerome Stroup. Vester Justice stated that the truck was equipped with brakes, in good order, and a horn that could be heard some distance away; that he was driving about twelve miles per hour, north, on the right or east side of South Wilcox Street in the City of McKinney, and about four feet from the curb; that he saw the little boy fifty or seventy-five feet away, standing on the opposite side of the street, one foot on the curb, the other out in the street, back turned south, facing north; had the appearance of being very young, not more than four, five or six years of age; witness stated that the street was clear of parked cars; admitted that he did not blow the horn or apply the brakes of the truck, between the time he saw the boy and the time he was struck and knocked down; stated further that he realized the child was partly in

the street and might dart across at any time; knew from his experience as a driver that children do not realize danger as do their elders, and often dart right out into the street; that at no time while witness was approaching did the child turn around or look in the direction of the approaching truck, seemingly did not see or know the truck was approaching; that witness watched the child until reaching a point on the street eight or ten feet south of the point where he was standing, then glanced just a moment at a man across the street (Funderburg), and, glancing back, saw the child three or four feet from the truck, running rapidly in a northeasterly direction, when he was struck by the left front bumper of the truck. Witness testified that, if the child had been running straight east, he would have collided with the side of the truck, and further that, if the truck had been two or three feet further to the right (east), the child would not have been struck by the bumper, but would have run into the side of the truck.

Cecil Funderburg, an eyewitness, was on the sidewalk on the east side of Wilcox Street, about facing the boy, when he left the curb and started to run—not straight but at an angle—out in front of the truck. When witness first saw the truck and boy, the truck was about eight or ten feet, on the street, from the boy, traveling north, the right side four or five feet from the east curb. The child seemingly did not realize the truck was coming. The truck was traveling about twelve miles per hour. The first foot or foot and half of the bumper struck the boy, knocking him down, and the right front wheel and rear dual wheels ran over his body. Witness did not see the truck swerve either to the right or to the left as it approached the child, nor did he hear the horn blow. The driver applied the brakes just as the child was hit, they slid, and were released after the front right wheel passed over the child's body, but before the rear wheels had passed over him. The truck traveled six or eight feet before the brakes were released and afterwards rolled fifteen or twenty feet and stopped.

Jerome Stroup, also an eyewitness, testified that the accident happened north of the center of the Church; saw the little boy as he came running from the west side of the street, toward the east, in the direction of where some children were playing on the sidewalk around the front of the church. At the time, the truck was about twenty feet away from the child, traveling about twelve miles per hour; did not think the child ever saw the truck before he was hit.

■. The foregoing is a statement of the material evidence bearing upon the question of liability. The doctrine of discovered peril, we think, is correctly stated in appellees' brief, as follows: "* * * discovered peril as we have it in Texas, requires an actual discovery of the perilous position, actual or potential, of the victim, in time for the defendant to avoid injury to the victim by the exercise of ordinary care with the means at hand. * * *" It will be observed that appellees admit that where the peril is either actual or potential, the doctrine applies. This principle was announced by our Supreme Court at quite an early day and has never been repudiated. In Houston & T. C. R. Co. v. Finn, 101 Tex. 511, 512; 109 S.W. 918, Chief Justice Gaines, speaking for the Court, applied the doctrine in the following language; he said: "* * * The case was submitted to the jury solely upon the ground of discovered peril, and, the jury having found that the servants of the company discovered that the plaintiff was in a perilous position, or about to enter into such position, in time to have avoided the injury by the means at their command, we cannot reverse the judgment if there be any evidence to justify the verdict. Being now of the opinion that there was some evidence to justify the jury in finding that the servants of the company discovered that the plaintiff was about to go into a place where he would be in danger of being struck by the cars in time to have avoided the injury by means within their power, we deem it a profitless task to discuss the question. * * *" Also, in Galveston, H. & S. A. Ry. Co. v. Wagner, Tex.Com.App., 298 S.W. 552, 553, the same principle was recognized in the following language; the court said: "In order for a person to be in peril, it is not necessary that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, then, in such event, the second person is held to have knowl-

edge of the peril of the other. This doctrine, we think, is clearly deducible from the many decisions on the subject of discovered peril, among which are the following: [authorities cited.]" And, in the comparatively recent case of Panhandle & Santa Fe Ry. Co. v. Napier, 117 S.W.2d 826, 829, Judge Walthall, speaking for the El Paso Court of Civil Appeals, used the following language in point; he said: "Our courts have uniformly held that a person is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. In Galveston, H. & S. A. Ry. Co. v. Wagner, 298 S.W. 552, Judge Harvey, speaking for the Commission of Appeals, said (page 553): 'Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, * * * the second person is held to have knowledge of the peril of the other,' and referred to a number of cases from the Supreme Court of this State as so holding, among them, Houston, E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 367, 268 S.W. 923; Texas & Pacific R. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410; Houston & T. C. R. Co. v. Finn, 101 Tex. 511, 109 S.W. 918, and other cases noted." Many other authorities to the same effect could be cited, but would add nothing to the conclusiveness of the authorities cited and the excerpts quoted.

■ We think the evidence clearly raised the issue of discovered peril. It tends to show, and the jury could have so found that, fully realizing the peril of the boy, the driver, in the exercise of ordinary care, could and should have blown the horn, which, if done, doubtless would have startled the child, caused him to discover the approaching truck, and abandon his evident purpose of crossing the street. We also think the evidence tends to show, and would have authorized the jury to find that, in the exercise of ordinary care, the driver should have so reduced the speed of the truck, as to enable him immediately to stop on discovering the boy, if he attempted to cross the street, as later he was discovered, by the driver, in a position of actual peril.

Again, appellee testified that he kept his eye on the boy until the truck reached a point on the street eight or ten feet south of the point where the boy was standing, then glancing a moment at the man across the street (Funderburg), immediately glancing back, discovered the boy three or four feet from the truck, rapidly running in a northeast direction, when he was struck by the left front bumper of the truck, inflicting injuries resulting in his death. The driver admitted that, if the truck had been turned two or three feet to the right (east), the child would not have been struck at all by the bumper, but would have run into the side of the truck. This evidence, in connection with the admission of the driver that he neither turned the car to the right, nor applied the brakes until just as the collision occurred, strongly tended to show, and the jury could have so found, that, after discovering the boy running three or four feet from the truck, the driver was negligent in failing to turn to the right, which he could have done without injury either to himself or to the truck, and, admittedly, if done, the boy would not have been struck at all and, doubtless, would be alive today.

■ Appellants also contend that the findings of the jury to the effect that the driver of the truck did not fail to keep a proper lookout, and that his failure to sound the horn was not negligence, are so against the great preponderance of the evidence as to justify a reversal and remand of the cause.

In discussing the issue of discovered peril, supra, we set out the evidence bearing upon these findings, and, to some extent, discussed its probative value. In view of this evidence, which is practically undisputed, we think the findings under consideration were so against the preponderance of the evidence as to be clearly wrong, justifying reversal. See 3 T.J., pp. 1097, 1098, sec. 769, and the authorities cited.

■ Those who operate motor vehicles over the streets and highways where children loiter or are wont to assemble are charged with the duty of exercising a high degree of vigilance and caution to avoid injuring them. This doctrine, recognized the country over, is well expressed in 45 C.J., pp. 702, 703, sec. 78, as follows: "* * * The known characteristics of children should, however, be taken into consideration in determining whether or not sufficient care for the safety of a child has been exercised in a particular case. Accordingly, the fact that children can-

not and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes upon those by whose acts or omissions a child may be injured the obligation of exercising more vigilance and caution than might be sufficient with respect to an adult, and conduct which might reach the standard of ordinary care with respect to an adult might, in the case of a child, amount to negligence or even gross negligence. As it is obvious that the ability of a child to exercise sufficient care and prudence for his own protection increases as he grows older, the care to be exercised toward a child must be proportionate to his maturity and capacity. The age of the particular child is, therefore, always a proper matter for consideration in determining whether proper care has been exercised to avoid injuring him, and conduct may be negligent with respect to a very young child, although it might reach the standard of ordinary care with respect to a child who had reached an age at which children are ordinarily more able to appreciate and avoid danger. Conversely, where one, although still a child, is able to exercise the care and discretion of an adult, he is entitled to no more care than would constitute ordinary care toward an adult."

■ Although insisting that the judgment should be affirmed, yet appellees move the court to reverse the judgment and here render judgment in favor of appellants for $98, the amount of damages found by the jury, if the court should be of opinion that the evidence raised the issue of discovered peril.

The amount of damages, $98, found by the jury, is made up of $3 hospital bill, $10 doctor's bill, and $85 funeral expenses. Nothing was allowed for the value, to the parents, of the child's services during minority, or for any contributions the child might have made after attaining his majority, although the evidence showed the parents to be poor working people; that the boy was bright, intelligent, strong, healthy, obedient, attractive, and helpful. This evidence, in our opinion, justified a larger verdict, but, as damages are collectible only when liability is established, we are of opinion that appellants are entitled to have their damages assessed by a jury who believe they are entitled to recover something, rather than by a jury who do not so believe.

The other questions raised doubtless will not arise on another trial, hence are not adjudicated. For the reasons stated, the judgment below is reversed and the cause is remanded for retrial on all issues raised by pleading and proof.

Reversed and remanded.

YOUNG, J., dissents in part.

YOUNG, Justice (concurring in part).

I believe appellants' assignments on discovered peril only should have been considered and sustained; and concur in the opinion of my Associate, Justice LOONEY, to that extent.

BOND, Chief Justice.

I concur in reversal and remand of this cause on all issues considered and sustained in our original opinion, but not to the extent that the probative value of the evidence bearing upon the questions of negligence and proximate cause shall, on another trial, be considered as the law of the case. Under Art. 2233, R.S., the trial court, to meet the ends of justice, and without stating grounds therefor, may grant two new trials under such conditions as exist in this case. A new trial should have been granted. I am in accord with the final disposition of this appeal.